# Illinois Official Reports

## Supreme Court

***People v. Almond*, 2015 IL 113817**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANTONIO ALMOND, Appellee. |
| Docket No. | 113817 |
| Filed<br>Rehearing denied | February 20, 2015<br>May 26, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Thomas Joseph Hennelly, Judge, presiding. |
| Judgment | Appellate court judgment reversed in part and affirmed in part. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.<br><br>Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Ginger Leigh Odom, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. |

Justices          JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion.

Chief Justice Garman concurred in part and dissented in part, with opinion.

# OPINION

¶ 1      Following a bench trial in the circuit court of Cook County, defendant was convicted of multiple firearm offense counts arising from his possession of a single loaded handgun while he was a felon. This appeal requires us to decide whether those convictions were authorized under the applicable criminal statutory provisions and the one-act, one-crime rule.

¶ 2      A majority of the appellate court answered that question in the negative and concluded that defendant could receive only one conviction "based on the same physical act of possessing one loaded firearm." The court also rejected defendant's fourth amendment challenge to his arrest and recovery of the loaded firearm. 2011 IL App (1st) 093587-U.

¶ 3      Before this court, the State seeks reversal of the appellate court's judgment, arguing that multiple separate convictions for firearms offenses based on the possession of a single loaded firearm by a felon are statutorily authorized. Defendant filed a cross-appeal, renewing his fourth amendment challenge to his arrest and the recovered evidence.

¶ 4      For the reasons that follow, we reverse in part and affirm in part the appellate court's judgment.

## I. BACKGROUND

¶ 6      In the early afternoon of October 30, 2008, police officers arrested defendant, Antonio Almond, at a liquor store located at 330 East Pershing Road in Chicago. Officers recovered a loaded firearm from defendant. Ultimately, defendant, who had prior felony convictions, was charged with multiple firearm offenses relating to possession of a firearm by a felon.

¶ 7      Prior to trial, defendant filed a motion to quash arrest and suppress evidence. At the hearing on his motion, defendant testified that at about 1 p.m. on the day of his arrest he entered the liquor store to purchase alcohol. Shortly thereafter, two police officers entered the store. Although they were dressed in regular plain clothes, defendant recognized them as police officers because their badges were visible. According to defendant, the officers immediately told him to "get on the gate," referring to the security gate used by store employees. The officers did not show defendant an arrest or search warrant. Defendant testified that after he placed his hands on the gate, one of the officers frisked him and grabbed his waist. During that encounter, the officer recovered a firearm from defendant's waistband. At the hearing, defendant conceded that inside the store he possessed a handgun loaded with six live rounds of ammunition.

¶ 8      Defendant denied that the officer asked him what he was doing inside the store. Defendant also denied that the officer asked him, prior to the frisk, whether he possessed any contraband.

Defendant further denied that he ever told officers that he possessed a firearm. Defendant specifically denied saying "I just got to let you know I got a gun on me." Defendant explained that he would not tell a police officer that information because he knew "it's wrong to have a gun."

¶ 9 On cross-examination, defendant testified that the officers did not initially identify themselves as police officers, did not tell him to stop, and did not produce their weapons until after they discovered he was armed. The officers arrested defendant after they recovered the gun from him.

¶ 10 The trial court found that defendant met his burden on the motion. The State then presented evidence of defendant's prior felony convictions for drug offenses. The State also presented the testimony of Chicago police officer James Davis. Officer Davis and his partner, Officer Carl Weatherspoon, were in their marked squad car when dispatch informed them that an anonymous individual had reported that several men were selling illegal drugs both outside and inside a liquor store at 330 East Pershing Road. The officers drove to that location and saw defendant and four other men outside the liquor store.

¶ 11 The officers parked their squad car and exited their vehicle. After their arrival, the group of men outside the store, including defendant, dispersed. Defendant and two other men went inside the liquor store. Another man walked away on Pershing Road, and a second man walked away through an alley.

¶ 12 Officer Davis and his partner went inside the store and approached defendant and the two other men. Officer Davis spoke to defendant, while his partner spoke with the other men. Officer Davis asked defendant what he was doing inside the store and whether defendant was in possession of any narcotics or weapons. Defendant replied, "I just got to let you know I got a gun on me." Upon receiving this information, Officer Davis frisked defendant and recovered a gun from the waistband of defendant's pants.

¶ 13 On cross-examination, Officer Davis explained that he did not know the identity of the informant and did not know whether the informant was reliable. The informant described the individuals selling illegal drugs as "several male blacks," but did not otherwise provide specific identifying information or physical descriptions. Officer Davis stated defendant was not acting in a suspicious manner when the officers approached him. Officer Davis indicated in his police report that he approached defendant to conduct a "field interview."

¶ 14 In rebuttal, defendant called Officer Carl Weatherspoon. Officer Weatherspoon heard Officer Davis talking to defendant, but he did not know what was said because Officer Weatherspoon was focused on his own conversation with the other two men.

¶ 15 In closing statements, defendant relied heavily on the United States Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000), holding that an anonymous tip lacking any indicia of reliability does not justify a *Terry* stop and frisk. Defendant argued that the anonymous tip here was not corroborated and had no indication of reliability and, therefore, did not provide reasonable suspicion to support Officer Davis's conduct under *Terry*. Defendant further argued that Officer Davis's account of the incident "strain[ed] credibility" because it was unlikely that an individual who illegally possessed a firearm would freely volunteer that information to a police officer.

¶ 16 The State argued that *Florida v. J.L.* was factually distinguishable because in that case the police officer, acting on an anonymous tip that a man at a bus stop wearing a plaid shirt was in

possession of a gun, stopped the alleged offender, frisked him, and recovered a gun. Here, in contrast, Officer Davis credibly testified that he approached the defendant for a field interview after arriving at the liquor store to investigate the anonymous tip about illegal drug sales at that store. Officer Davis asked defendant general questions about why he was at the store and whether he possessed any contraband. The State argued that this interaction did not constitute a *Terry* stop. Once defendant told officers that he was in possession of a firearm, the officers were justified in recovering that firearm. The recovered firearm also provided probable cause to arrest defendant. Following arguments, and with defendant's agreement, the court continued the matter to consider the application of *Florida v. J.L.*

¶ 17    Ultimately, the trial court denied defendant's motion to quash arrest and suppress evidence. The court concluded that *Florida v. J.L.* was distinguishable because Officer Davis testified that defendant voluntarily told him that he was in possession of a firearm before Officer Davis recovered the firearm. The court further explained that it did not believe the encounter between Officer Davis and defendant constituted a *Terry* stop, unlike in *Florida v. J.L.*

¶ 18    Thus, in the trial court's opinion, the issue was "really more a matter of credibility rather than a matter of law" because the court was presented with two conflicting accounts of the incident. Assessing the credibility of the witnesses, the court noted that defendant was a convicted felon. The court then found that the officers' testimony was clear and credible and was not substantively impeached. Consequently, the court accepted the State's version of the incident and concluded that the officers acted properly after defendant indicated he was in possession of a firearm.

¶ 19    Defendant filed a motion to reconsider, and the trial court denied that motion. The matter then proceeded to a bench trial.

¶ 20    At defendant's bench trial, Officer Davis testified consistently with his testimony at the pretrial suppression hearing. Officer Davis did, however, elaborate on his interaction with defendant inside the store. Officer Davis explained that defendant and the other two men were located next to a wall at the back of the store. Officer Davis denied that defendant and the other men were not free to leave when he entered the store. Officer Davis further denied that he intended to search the men when he approached them.

¶ 21    After approaching defendant and the other two men, Officer Davis asked them what they were doing inside the store, and they replied that they were going to buy chips. Officer Davis next asked them to explain why they were at the back of the store instead of near the register if they wanted to buy chips. Neither defendant nor the other two men offered any response. Officer Davis then asked them whether they possessed any weapons or narcotics. Only defendant replied, stating that "I just got to let you know I got a gun on me." Defendant reached toward his waistband, but Officer Davis instructed defendant that the officer would retrieve the weapon. Officer Davis recovered an uncased and loaded .38-caliber firearm from defendant's front waistband.

¶ 22    To support the prior felony convictions alleged in the indictment, the State introduced certified copies of defendant's 2008 Class 4 felony conviction for possession of a controlled substance and his 2004 and 2003 Class 2 felony convictions for manufacture or delivery of a controlled substance.

¶ 23    The State then rested its case. Defendant did not present any evidence. Following closing arguments, the trial court found defendant guilty on all counts. The court sentenced defendant to the statutory minimum of six years' imprisonment for the most serious offense, armed habitual criminal, and to three years' imprisonment on the remaining counts, to be served concurrently.

¶ 24    On direct appeal, a divided appellate court affirmed in part and reversed in part the circuit court's judgment. 2011 IL App (1st) 093587-U. In relevant part, the court rejected defendant's fourth amendment challenge to his arrest and the evidence, albeit for different reasons. The majority reasoned that Officer Davis engaged in a proper *Terry* stop based on reasonable suspicion. 2011 IL App (1st) 093587-U, ¶ 70. The concurring justice concluded that the incident between Officer Davis and defendant was a consensual encounter that did not implicate the fourth amendment. 2011 IL App (1st) 093587-U, ¶ 134 (Garcia, J., concurring in part and dissenting in part).

¶ 25    The court disagreed, however, on whether defendant could receive separate convictions based on the simultaneous possession of a firearm and ammunition in a single loaded firearm.[1] Notably, the parties agreed that defendant could be convicted of being an armed habitual criminal based on his possession of a firearm (count I) and unlawful use of weapons (UUW) by a felon based on his possession of firearm ammunition (count III). 2011 IL App (1st) 093587-U, ¶¶ 74-76. The majority of the court, however, refused to accept the parties' agreement. 2011 IL App (1st) 093587-U, ¶ 74. Applying one-act, one-crime principles and construing the applicable statutory language, the majority concluded that the statute was ambiguous and found that only one offense is permitted for a single loaded firearm. 2011 IL App (1st) 093587-U, ¶¶ 77-86. Accordingly, the majority affirmed defendant's conviction on the most serious offense, armed habitual criminal, but vacated his conviction for UUW by a felon. 2011 IL App (1st) 093587-U, ¶ 86.

¶ 26    Justice Garcia dissented on the latter portion of the court's opinion, arguing that the majority failed to consider that its construction of the statute and application of the one-act, one-crime rule had been rejected in *People v. Anthony*, 2011 IL App (1st) 091528-B.[2] Specifically, *Anthony* held that separate convictions for a single loaded firearm were permissible. Consequently, Justice Garcia argued that defendant's conviction for armed habitual criminal based on possession of a firearm and his conviction for UUW by a felon based on possession of firearm ammunition were proper and should be affirmed. 2011 IL App (1st) 093587-U, ¶ 135 (Garcia, J., concurring in part and dissenting in part).

---

[1]Although defendant was initially charged with, and ultimately convicted of, seven separate counts of firearm offenses, only two, count I (armed habitual criminal based on possession of a firearm) and count III (UUW by a felon based on possession of ammunition), are at issue in this case. In the appellate court, the State conceded that the remaining charges and convictions, all based on defendant's possession of a firearm, should be vacated. 2011 IL App (1st) 093587-U, ¶¶ 73-76. Consequently, the parties' respective arguments before this court are limited to these two charges. Our analysis here, therefore, is similarly limited to these two charges.

[2]Justice Garcia observed that the author of the majority's opinion dissented in *Anthony*. Compare 2011 IL App (1st) 093587-U, with *People v. Anthony*, 2011 IL App (1st) 091528-B (Gordon, P.J., dissenting).

¶ 27 This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 28                                    II. ANALYSIS

¶ 29                    A. Statutory Construction of UUW by a Felon

¶ 30 On appeal, the State argues that the plain and unambiguous language of the UUW by a felon statute (720 ILCS 5/24-1.1 (West 2008)) authorizes multiple convictions for firearms offenses when a felon possesses a loaded firearm, *i.e.*, a conviction for possession of the firearm and a separate conviction for the simultaneous possession of ammunition inside that firearm. More specifically, the State relies on section 24-1.1(e) of that statute, providing that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). The State contends that this language renders the possession of a firearm an act distinct from possession of ammunition, thereby permitting separate and multiple convictions for the simultaneous possession of a firearm and ammunition by a felon.

¶ 31 The State also notes that this particular statutory language was added by amendment to the UUW by a felon statute following this court's decision in *People v. Carter*, 213 Ill. 2d 295 (2004). In *Carter*, this court found that the preamended version of the statute (720 ILCS 5/24-1.1 (West 1996)) was ambiguous on the issue of whether multiple convictions were permitted for the simultaneous possession of a firearm and ammunition and should, therefore, be construed in favor of the accused. *Carter*, 213 Ill. 2d at 302. We also relied on our previous consistent holdings that, when a statute is ambiguous, simultaneous possession could not support multiple convictions in the absence of a contrary provision. *Carter*, 213 Ill. 2d at 302-03. Accordingly, we held that under the preamended version of the UUW by a felon statute the simultaneous possession of a firearm and ammunition constituted a single offense that could support only a single conviction. *Carter*, 213 Ill. 2d at 303-04.

¶ 32 Defendant responds that he can be convicted of only a single criminal offense based on his possession of a loaded firearm because his conduct constituted a single act under the one-act, one-crime rule of *People v. King*, 66 Ill. 2d 551 (1977). Defendant contends that the legislative amendment to section 24-1.1(e) following our decision in *Carter* did not abrogate the one-act, one-crime rule for multiple convictions of firearm offenses based on the possession of a single loaded firearm. Defendant argues that while the amendment "clarifies that the *separate* possession of multiple firearms or firearm ammunition are distinct offenses," it does not address the precise issue here—whether multiple convictions can be supported by the possession of a single loaded firearm. Defendant further argues that the statute is ambiguous because it does not distinguish between loaded and unloaded firearms or ammunition possessed in a loaded firearm.

¶ 33 We must first determine whether the UUW by a felon statute authorizes separate offenses to be charged for the simultaneous possession of a firearm and ammunition, as occurs when a felon possesses a loaded firearm. As we explained in *Carter* when considering the same question under the preamended version of the statute, "one-act, one-crime principles apply only if the statute is construed as permitting multiple convictions for simultaneous possession." *Carter*, 213 Ill. 2d at 301. We now address that issue.

- 6 -

¶ 34    We review *de novo* the question of whether the statute authorizes separate convictions for the simultaneous possession of a firearm and ammunition because it presents a question of statutory interpretation. *People v. Elliott*, 2014 IL 115308, ¶ 11. Our primary goal when construing a statute is to give effect to the legislature's intent, best indicated by giving the statutory language its plain and ordinary meaning. *Elliott*, 2014 IL 115308, ¶ 11. A reviewing court may also consider the reason for the law and the problems intended to be remedied. *People v. Perez*, 2014 IL 115927, ¶ 9.

¶ 35    The UUW by a felon statute, in relevant part, provides:

> "(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2008).

The statute, as amended, further provides that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008); see also Pub. Act 94-284, § 10 (eff. July 21, 2005) (amending the UUW by a felon statute with this language).

¶ 36    Under the plain meaning of this statutory language, the UUW by a felon statute unambiguously authorizes separate convictions when a felon possesses a loaded firearm, a conviction based on the firearm and a conviction based on the ammunition inside that firearm. The language not only criminalizes the possession of *any* firearm or *any* firearm ammunition by a felon, but also clarifies that the possession of *each* firearm or firearm ammunition by a felon constitutes *a single and separate* violation.

¶ 37    In our view, construing the statute to authorize separate convictions for the simultaneous possession of a firearm and ammunition in a loaded firearm is further supported by the legislature's amendment of the UUW by a felon statute subsequent to our decision in *Carter*. See *Perez*, 2014 IL 115927, ¶ 9 (when construing a statute, a reviewing court may consider the reason for the law and the problems intended to be remedied). In *Carter*, we concluded that, in the absence of a statutory provision expressly authorizing separate convictions for simultaneous possession, the use of the term "any" in the statute was ambiguous and did not adequately define the allowable unit of prosecution. *Carter*, 213 Ill. 2d at 302. Accordingly, we held that the preamended version of the UUW by a felon statute did not permit separate convictions for simultaneous possession. *Carter*, 213 Ill. 2d at 304.

¶ 38    In an apparent response to *Carter*, the legislature amended the UUW by a felon statute to provide that "[t]he possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation." 720 ILCS 5/24-1.1(e) (West 2008). Significantly, the legislative amendment to the UUW by a felon statute here tracks almost exactly the statutory language we identified in *Carter* as providing evidence of legislative intent to authorize separate convictions based on simultaneous violations of a single criminal statute. See *Carter*, 213 Ill. 2d at 303 (" '[a] violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act' ") (quoting with approval 720 ILCS 570/402 (West 2002)); see also Pub. Act 94-284, § 10 (eff. July 21, 2005) (amending the UUW by a felon statute to provide that "[t]he possession of each

firearm or firearm ammunition in violation of this Section constitutes a single and separate violation").

¶ 39    Essentially, the legislature adopted the statutory language that *Carter* recognized would authorize separate convictions for simultaneous possession of contraband. Under these circumstances, the legislative intent to permit separate convictions for simultaneous possession of a firearm and ammunition under the UUW by a felon statute could not be clearer. As this court has previously explained, "[i]t is presumed that every amendment to a statute is made for some purpose, and effect must be given to the amended law in a manner consistent with the amendment." *People v. Youngbey*, 82 Ill. 2d 556, 563 (1980).

¶ 40    We also note that our appellate court has similarly construed the amended UUW by a felon statute to authorize separate convictions for the simultaneous possession of a firearm and ammunition in a loaded firearm. *People v. Anthony*, 2011 IL App (1st) 091528-B, ¶ 9; see also *People v. Howard*, 2014 IL App (1st) 122958 (following *Anthony*). Both appellate court decisions also share our assessment of the legislature's response to *Carter*. See *Anthony*, 2011 IL App (1st) 091528-B, ¶ 17 (recognizing that the legislature adopted the language this court identified in *Carter* as necessary to authorize separate convictions); *Howard*, 2014 IL App (1st) 122958, ¶ 18 (observing that "[s]ection 24-1.1(e) was amended in 2005, in response to *Carter*, in order to alleviate an ambiguity in the statute").

¶ 41    Nonetheless, defendant asserts that the statute remains ambiguous because it does not distinguish between loaded and unloaded firearms, as the appellate court majority here concluded. 2011 IL App (1st) 093587-U, ¶¶ 82-86. We disagree.

¶ 42    Although the statute does not expressly distinguish between loaded and unloaded firearms, the lack of such a distinction does not render the statute ambiguous. Instead, the statutory language clearly prohibits a felon's possession of any firearm or firearm ammunition, and it renders *each* possession of either item a single and separate violation. Under the plain meaning of that unambiguous language, it is irrelevant whether the firearm is loaded or unloaded, or whether the ammunition is possessed within a loaded firearm or not. Contrary to defendant's implication, the statutory language does not exclude, or otherwise exempt, ammunition simultaneously possessed by a felon in a loaded firearm. We may not depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions not expressed by the legislature. *People v. Lewis*, 223 Ill. 2d 393, 402 (2006). Effectively, then, the UUW by a felon statute prohibits felons from possessing (1) a loaded firearm; (2) an unloaded firearm; or (3) ammunition, whether loaded in a firearm or not.

¶ 43    Accordingly, we hold that the UUW by a felon statute authorizes separate convictions for the simultaneous possession of a firearm and ammunition in a single loaded firearm. As noted above, the plain language of the statute prohibits felons from possessing any firearm or firearm ammunition and unambiguously treats each possession as a separation violation of the statute. 720 ILCS 5/24-1.1(a), (e) (West 2008).

¶ 44                          B. One-Act, One-Crime Rule

¶ 45    Determining that the UUW by a felon statute authorizes separate convictions for simultaneous possession, however, does not end our inquiry. The parties also disagree on whether defendant's conviction for armed habitual criminal based on his possession of a firearm and his conviction for UUW by a felon based on his possession of ammunition violate

the one-act, one-crime rule from *People v. King*, 66 Ill. 2d 551 (1977). The State argues that the one-act, one-crime rule is not implicated by defendant's convictions because those convictions are based on two separate acts—possession of a firearm and possession of ammunition, respectively. In support of its position, the State observes that the two charging offenses similarly identified defendant's conduct as two distinct acts.

¶ 46    Defendant responds that his convictions violate the one-act, one-crime rule because his possession of a loaded firearm constitutes a single physical act. Defendant asserts that his possession of a firearm was not an act separate and distinct from his simultaneous possession of the ammunition inside that firearm.

¶ 47    The parties' respective arguments on the one-act, one-crime rule present a question of law that we review *de novo*. *People v. Robinson*, 232 Ill. 2d 98, 105 (2008). Under that rule, a defendant may not be convicted of multiple offenses based on the same physical act. *King*, 66 Ill. 2d at 566; *People v. Miller*, 238 Ill. 2d 161, 165 (2010). As we explained in *King*, however, "[m]ultiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts." *King*, 66 Ill. 2d at 566. For purposes of the rule, an "act" is defined as any overt or outward manifestation that will support a separate conviction. *King*, 66 Ill. 2d at 566; *People v. Crespo*, 203 Ill. 2d 335, 342 (2001).

¶ 48    Applying those principles in this case, we agree with the State that defendant's separate convictions do not violate the one-act, one-crime rule. Defendant, indisputably a previously convicted felon, possessed two separate and distinct items of contraband, a firearm and firearm ammunition. Possession of either item by a felon is an independent criminal offense. 720 ILCS 5/24-1.1(a) (West 2008). Although defendant's possession of those items was simultaneous, that factor alone does not render his conduct a "single act" for purposes of the one-act, one-crime rule. Instead, defendant committed two separate acts—possession of a firearm and possession of firearm ammunition. To any extent that defendant's acts were interrelated because of their simultaneous nature, this court has explained that " '[a]s long as there are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions.' " (Emphasis omitted.) *People v. Rodriguez*, 169 Ill. 2d 183, 189 (1996) (quoting *People v. Myers*, 85 Ill. 2d 281, 288 (1981)); see also *Miller*, 238 Ill. 2d at 165 (detailing the one-act, one-crime doctrine and citing *King* for the same proposition). Simply stated, the act of possession of a firearm is materially different from the act of possession of firearm ammunition, even if both items are possessed simultaneously.

¶ 49    Nonetheless, defendant argues that his possession of a loaded firearm constitutes a single act for purposes of the rule. The fatal flaw in defendant's argument is that he was neither charged with, nor convicted of, possession of a *loaded* firearm. Instead, defendant was charged with, and convicted of, being an armed habitual criminal based on his possession of a firearm (count I) and UUW by a felon based on his possession of firearm ammunition (count III). These charges clearly illustrate the State's intent to treat defendant's conduct as separate and multiple acts. See *Crespo*, 203 Ill. 2d at 345 (generally, to comply with *King* and sustain multiple convictions, the charging instrument must indicate that the State intends to treat the defendant's conduct as separate and multiple acts).

¶ 50    Accordingly, we conclude that defendant's possession of a firearm and his possession of firearm ammunition, both occurring when he was a felon, are separate acts that support his two

convictions as charged by the State in count I and count III. *King*, 66 Ill. 2d at 566. We therefore reject defendant's challenge to those convictions under the one-act, one-crime rule.

¶ 51                                                    C. Cross-Relief

¶ 52        Defendant seeks cross-relief, arguing that the trial court erred in denying his motion to quash arrest and suppress evidence because Officer Davis effected a *Terry* stop that was not supported by reasonable suspicion, in violation of the fourth amendment. Citing *Florida v. J.L.*, 529 U.S. 266, 271 (2000), defendant argues that an anonymous informant's unexplained and uncorroborated tip combined with the flight of two men standing outside a store did not support a reasonable suspicion that defendant was committing a crime. Defendant further argues that the incident was not a consensual encounter because he was not free to leave and was not free to terminate the "increasingly adversarial encounter with Officer Davis." Defendant contends that a reasonable, innocent person in the same situation would have considered himself seized within the meaning of the fourth amendment.

¶ 53        The State responds that the trial court properly denied defendant's motion to quash arrest and suppress evidence. Initially, the State contends that defendant forfeited his fourth amendment challenge to his arrest because he failed to raise the issue in a posttrial motion and also forfeited plain-error review by not recognizing his forfeiture in his request for cross-relief. Forfeiture aside, the State argues that the underlying incident did not implicate the fourth amendment because it was a consensual encounter between the officer and defendant and defendant voluntarily confessed that he was in possession of a firearm. Alternatively, the State argues that the officer conducted a proper *Terry* stop after defendant confessed to possessing a firearm because that information provided the officer with reasonable suspicion for the stop.

¶ 54        First, we reject the State's argument on forfeiture. Ordinarily, to preserve an issue for review a party must raise it at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 190 (1988). As defendant correctly notes, however, constitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture on direct appeal under *Enoch*. *People v. Cregan*, 2014 IL 113600, ¶ 16. In *Cregan*, we explained that when, as here, a defendant fails to raise a constitutional issue in a posttrial motion but the issue was raised at trial and could be raised in a postconviction petition "the interests in judicial economy favor addressing the issue on direct appeal rather than requiring defendant to raise it in a separate postconviction petition." *Cregan*, 2014 IL 113600, ¶ 18. In accordance with those interests, we will review the merits of defendant's fourth amendment challenge in his cross-appeal.

¶ 55        When reviewing the trial court's ruling on a motion to quash arrest and suppress evidence, we apply a two-part standard of review. *People v. Grant*, 2013 IL 112734, ¶ 12. We afford great deference to the trial court's findings of fact and will reverse those factual findings only if they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. We review *de novo* the trial court's ultimate legal ruling on whether the evidence should be suppressed. *Hackett*, 2012 IL 111781, ¶ 18. In addition, we may consider evidence presented at defendant's trial and at the suppression hearing. *People v. Richardson*, 234 Ill. 2d 233, 252 (2009). We first consider the parties' disagreement on whether the underlying incident involved a consensual encounter.

¶ 56    Both the fourth amendment and the Illinois Constitution of 1970 guarantee the right of individuals to be free from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. It is settled, however, that not every encounter between a police officer and a private citizen involves a seizure or restraint of liberty that implicates the fourth amendment. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Indeed, a consensual encounter between a citizen and an officer does not violate the fourth amendment because it does not involve coercion or a detention. *People v. McDonough*, 239 Ill. 2d 260, 268 (2010) (citing *Luedemann*, 222 Ill. 2d at 544-45).

¶ 57    As the United States Supreme Court has recognized when considering whether a challenged incident was a consensual encounter, a person is seized within the meaning of the fourth amendment "only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). In other words, a person has been seized when, considering the totality of the circumstances, a reasonable person would believe he is not free to leave. *People v. Oliver*, 236 Ill. 2d 448, 456 (2010). Generally, the following *Mendenhall* factors indicate a seizure without the person attempting to leave: (1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) some physical touching of the person; or (4) using language or tone of voice compelling the individual to comply with the officer's requests. *Oliver*, 236 Ill. 2d at 456 (citing *Mendenhall*, 446 U.S. at 554). While these factors are not designed to be exhaustive, this court has recognized that the absence of any *Mendenhall* factors " 'is highly instructive' " on the issue of whether a seizure has occurred. *Oliver*, 236 Ill. 2d at 457 (quoting *Luedemann*, 222 Ill. 2d at 554).

¶ 58    Here, none of the *Mendenhall* factors were present. Although there were two officers involved in the underlying encounter, Officers Davis and Weatherspoon were actually outnumbered by defendant and the other two men inside the store. Moreover, both officers wore plain clothes, and neither displayed a weapon. The officers did not physically touch defendant before the gun was recovered. Finally, there was no evidence that either officer used language or a tone of voice compelling defendant to comply with the officer's request. In fact, at the suppression hearing, defendant testified that Officer Davis and Officer Weatherspoon did not initially identify themselves as police officers and did not tell him to stop.

¶ 59    Defendant concedes that neither of the officers displayed a weapon or used physical touching. Nevertheless, defendant contends that the officers created a threatening presence when they arrived in a marked squad car. Defendant further contends that Officer Davis's language and actions demonstrated that compliance with his request was compelled because he (1) "singled" defendant out from the other men and followed defendant into the store; (2) "backed [defendant] up against the wall in the store"; and (3) asked defendant what he was doing inside the store, even though the answer to that question was obvious.

¶ 60    We are not persuaded by defendant's arguments. First, we believe that the police officers' arrival in a marked car, standing alone, is insufficient to create the threatening presence of several officers for purposes of *Mendenhall*. Furthermore, Officer Davis testified that defendant and the other men independently dispersed after the officers' arrival, suggesting that the men felt free to leave and did not feel threatened by the officers' presence.

¶ 61    Second, defendant's characterization of Officer Davis's allegedly compelling conduct is not supported by the record. The evidence shows that Officer Davis followed defendant and

the other two men into the store, but there is no evidence that Officer Davis focused on defendant. Indeed, Officer Davis acknowledged that he did not have a specific description of the individuals alleged to be involved in narcotics activity at the store. Officer Davis also testified that he directed his questions to all three of the men inside the store. Nor is there any evidence that Officer Davis "backed" defendant into the wall. To the contrary, Officer Davis testified that defendant and the other men were already next to a wall at the back of the store when Officer Davis arrived. Officer Davis simply walked to their location.

¶ 62   Third, there is nothing particularly coercive or unusual about Officer Davis asking defendant why he was inside the store when Officer Davis was at the store to investigate allegations that individuals were selling narcotics inside that store. To complete that investigation, Officer Davis would necessarily have to pose general questions to the store's occupants.

¶ 63   To the extent that defendant challenges the credibility of Officer Davis's account, we note that the trial court recognized that this case involved a credibility determination. Indeed, at the suppression hearing, defendant and Officer Davis offered completely different versions of the encounter inside the store. The court, however, expressly resolved the credibility issue in Officer Davis's favor, finding that his testimony was clear and credible. Nothing in the record suggests that the trial court's assessment was against the manifest weight of the evidence or should otherwise be disturbed. See *Hackett*, 2012 IL 111781, ¶ 18 (when reviewing a suppression ruling, this court affords great deference to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence).

¶ 64   Under the circumstances of this case, we conclude that the interaction between Officer Davis and defendant was a consensual encounter and that defendant was not seized within the meaning of the fourth amendment. After defendant indicated that he was armed, Officer Davis properly searched him and recovered the loaded firearm.

¶ 65   Accordingly, we reject defendant's fourth amendment argument challenging his arrest and the recovered evidence. In addition, because we conclude that the incident between Officer Davis and defendant was a consensual encounter that did not implicate the fourth amendment, we do not need to address defendant's remaining argument that the incident constituted an improper *Terry* stop that lacked reasonable suspicion under the United States Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266 (2000).

¶ 66                                    III. CONCLUSION

¶ 67   For the reasons explained above, we reverse the part of the appellate court's judgment that vacated defendant's conviction and sentence for UUW by a felon based on his possession of firearm ammunition. We, therefore, reinstate that conviction and sentence. Thus, as the parties originally agreed in the appellate court (2011 IL App (1st) 093587-U, ¶¶ 74-76), defendant was properly convicted of armed habitual criminal based on his possession of a firearm (count I) and UUW by a felon based on his possession of firearm ammunition (count III). The trial court imposed prison terms of six years and three years, respectively, on those convictions, to be served concurrently. We affirm those convictions and sentences.

¶ 68   We also reject defendant's fourth amendment challenge because the underlying incident was a consensual encounter. *McDonough*, 239 Ill. 2d at 268; *Luedemann*, 222 Ill. 2d at 544-45. For that reason, we affirm the part of the appellate court's judgment that affirmed the circuit

court's denial of defendant's motion to quash arrest and suppress evidence.

¶ 69    Appellate court judgment reversed in part and affirmed in part.

¶ 70    CHIEF JUSTICE GARMAN, concurring in part and dissenting in part:

¶ 71    I agree with the majority's analysis of the issues in defendant's cross-appeal. However, the majority holds that defendant may be convicted of armed habitual criminal (720 ILCS 5/24-1.7 (West 2008)) for possession of the firearm and of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1 (West 2008)) (UUW by a felon) for possession of the ammunition that was loaded inside the firearm. Because the majority misconstrues the language of the UUW by a felon statute and erroneously holds that the one-act, one-crime rule does not apply in this case, I respectfully dissent.

¶ 72    The majority first addresses the issue of whether the UUW by a felon statute permits multiple convictions for what would otherwise constitute a single act, *i.e.*, the simultaneous possession of a firearm and firearm ammunition. In *People v. Carter*, 213 Ill. 2d 295 (2004), this court construed the then-current version of the UUW by a felon statute to permit only one conviction for the simultaneous possession of two handguns and two clips of ammunition for the guns. The defendant had been charged under the UUW by a felon statute with four counts, one count for each handgun and each clip of ammunition. On appeal to this court, the defendant argued that he could not be convicted of multiple offenses for a single simultaneous act of possession. He thus argued that three of his convictions must be vacated. The defendant relied on this court's prior decision in *People v. Manning*, 71 Ill. 2d 132 (1978), which held that the simultaneous possession of different types of drugs could not support multiple convictions, absent an express statutory provision to the contrary. In *Carter*, we held that the UUW by a felon statute was ambiguous as to whether the legislature intended the simultaneous possession of weapons and ammunition to constitute a single offense or multiple offenses. We noted that this court has consistently held that where a statute is ambiguous, in the absence of a statutory provision to the contrary, simultaneous possession could not support multiple convictions. *Carter*, 213 Ill. 2d at 302.

¶ 73    As indicated by the majority, the legislature subsequently amended the UUW by a felon statute in response to *Carter*. The statute now provides that "[t]he possession of each firearm or firearm ammunition *in violation of this Section* constitutes a single and separate violation." (Emphasis added.) 720 ILCS 5/24-1.1(e) (West 2008). In this case, the State argues that the plain language of this section permits multiple convictions for the simultaneous possession by defendant of the firearm and the ammunition loaded inside the firearm. Defendant, on the other hand, argues that the statutory amendment did not abrogate the one-act, one-crime rule; rather, it authorizes multiple convictions only for the separate possession of multiple firearms and/or ammunition and not for the simultaneous act of possessing a loaded firearm. Therefore, according to defendant, the amendment is ambiguous.

¶ 74    The majority agrees with the State and holds that under the plain language of the amendment to the UUW by a felon statute, multiple convictions may be had for the simultaneous possession of a firearm and the ammunition loaded therein, noting that the statutory amendment adopted language we recognized in *Carter* would authorize separate convictions for simultaneous possession. *Supra* ¶ 43.

¶ 75    I agree in principle with the majority's analysis to the extent it holds that separate convictions may be had under the UUW by a felon statute for the simultaneous possession of a firearm and the ammunition loaded within it. However, whether defendant can be convicted of both offenses under the UUW by a felon statute is not the issue in this case. Defendant was not charged with both offenses under that statute. The two charges at issue in this appeal are possession of a firearm under the armed habitual criminal statute and possession of the ammunition loaded in the firearm under the UUW by a felon statute. It is irrelevant for purposes of this appeal whether a defendant may be convicted of both offenses under the UUW by a felon statute. One need only look to the language of that statute to understand the error in the majority's analysis. As previously stated, the amended statute provides that "[t]he possession of each firearm or firearm ammunition *in violation of this Section* constitutes a single and separate violation." The plain language of the amendment demonstrates that it applies only where a defendant is charged with multiple offenses under the UUW by a felon statute. That is not the case here.

¶ 76    The majority cites two appellate court decisions in support of its construction of the UUW by a felon statute. *Supra* ¶ 40. However, these decisions are inapplicable to this case. In *People v. Anthony*, 2011 IL App (1st) 091528-B, the defendant was convicted of two counts of violating the UUW by a felon statute. One count charged him with possession of a handgun. The other count charged him with possession of the ammunition loaded inside the handgun. The appellate court affirmed his convictions. The defendant argued on appeal that one of his convictions should be vacated because the legislature did not intend to permit multiple convictions based upon the possession of a single loaded firearm. The appellate court framed the issue as whether the UUW by a felon statute permits separate offenses to be charged for simultaneous possession of a handgun and the firearm ammunition inside of that handgun. The court found that the plain and unambiguous language of the statute permitted such convictions, noting particularly the post-*Carter* amendment with its "single and separate violation" language. (Internal quotation marks omitted.) *Id.* ¶ 9. *People v. Howard*, 2014 IL App (1st) 122958, followed the reasoning of *Anthony*. Unlike the instant case, both *Anthony* and *Howard* involved multiple charges for possession of a firearm and ammunition loaded therein under the UUW by a felon statute. Neither of these cases applies here, where defendant was charged with only one offense under the UUW by a felon statute.

¶ 77    The language of the UUW by a felon statute added in response to *Carter* makes clear that the legislature intended to abrogate the one-act, one-crime rule only with respect to offenses charged under "this Section." The majority cites no authority for the notion that by amending the UUW by a felon statute, the legislature intended to allow multiple convictions based upon the same physical act where the State charges a defendant with only one offense under the UUW by a felon statute and a second offense under an entirely different provision of the Criminal Code of 1961. While the offense of armed habitual criminal is contained in the same article as the offense of UUW by a felon, the amendment to the UUW by a felon statute refers to "this Section," not to "this Article." Thus, the legislature did not provide for multiple offenses to be carved from the same physical act unless both the offenses were violations of the UUW by a felon statute.

¶ 78    Since the UUW by a felon statute is not implicated in this case, the question becomes whether defendant's convictions for simultaneously possessing a firearm and the ammunition loaded in it violate the one-act, one-crime doctrine. Under that doctrine, a defendant may not

be convicted of multiple offenses that are carved out of precisely the same physical act. *People v. King*, 66 Ill. 2d 551 (1977); *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). "Act" refers to any overt or outward manifestation that will support a different offense. A defendant may be convicted of multiple offenses where he has committed several acts, despite the interrelationship of those acts. *King*, 66 Ill. 2d at 566.

¶ 79     The majority holds that defendant's convictions for possession of a firearm and the ammunition loaded inside it do not violate the one-act, one-crime rule. Despite the simultaneous nature of defendant's possession, the majority stresses that he possessed two different items of contraband, *i.e.*, the firearm and the ammunition. According to the majority, possession of either item is an independent criminal offense. Thus, the majority finds that defendant's acts were merely interrelated rather than one simultaneous act of possession. *Supra* ¶ 48. I disagree with this analysis.

¶ 80     The determinative factor in a one-act, one-crime analysis is not how the State charges the offenses. Absent statutory authority, the State may not divide one physical act into multiple offenses by the manner in which it charges the defendant. Instead, we must look to the nature of the act itself, *i.e.*, whether the defendant committed more than one physical act that would support separate offenses. *King*, 66 Ill. 2d at 566. Here, the firearm was loaded with ammunition. Necessarily, the possession of the firearm and the ammunition was simultaneous. Both items of contraband were possessed with one physical act. It is impossible to separate the possession of the firearm from the possession of the ammunition within it. The majority does not attempt to explain how the single physical act of possession of a firearm loaded with ammunition can constitute multiple physical acts. Indeed, the majority does not claim that the possession here was anything other than simultaneous; instead, the majority relies on the fact that defendant possessed two different items of contraband. This is not the test. The test is whether there was one or more physical acts. Clearly, in this case there was only one physical act.

¶ 81     The majority rejects defendant's argument that his possession of a loaded firearm constituted a single physical act, noting that defendant was not charged with possessing a loaded firearm. Instead, the State charged him with one count of possessing the firearm and one count of possessing the ammunition. The majority finds that this shows the State's intent to treat defendant's conduct as separate and multiple acts. This court has held that the one-act, one-crime rule is not a rule of constitutional dimension. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009). Therefore, the legislature may, as it has done in the UUW by a felon statute, allow for multiple offenses based upon the same physical act. However, this is a legislative, not a prosecutorial, prerogative.

¶ 82     The majority relies on this court's decision in *People v. Crespo*, 203 Ill. 2d 335 (2001), for the proposition that to comply with *King* and obtain multiple convictions, the charging instrument must indicate that the State intends to treat a defendant's conduct as separate and multiple acts. *Supra* ¶ 49. *Crespo* is inapposite to the instant case. In *Crespo*, the defendant was charged with murder of one victim and aggravated battery for the stabbing of a second victim. The defendant stabbed the second victim three times in rapid succession, once in the arm and twice in the thigh. As to that victim, the State charged the defendant with one count of armed violence and two counts of aggravated battery, one for intentionally causing bodily harm and one for using a deadly weapon. He was convicted of the murder of the first victim and of all

counts as to the second victim. The appellate court vacated one of the aggravated battery convictions. Before this court, the defendant argued that his remaining conviction for aggravated battery could not stand because it was based on the same physical act that formed the basis for the armed violence charge. The State argued that the defendant stabbed the victim three times and that each act of stabbing constituted a separate offense. Although this court acknowledged that each act of stabbing could support a separate offense, the court noted that this was not the theory the State used in charging the defendant or in presenting the case to the jury. The State treated the multiple stabbings as a single attack and this court declined to allow the State to change its charging theory on appeal to the defendant's detriment. *Crespo*, 203 Ill. 2d at 343-44.

¶ 83    *Crespo* does not stand for the proposition that the manner in which a defendant is charged by the State determines whether a single physical act may be treated as multiple acts; rather, *Crespo* teaches that if the defendant has committed multiple acts, the State must make its intention to charge multiple offenses clear in the charging instrument and may not change its theory of the case on appeal. *Crespo* does not support the proposition that, absent statutory authority, the State may charge multiple offenses based upon the same physical act.

¶ 84    The majority opines that, "[s]imply stated, the act of possession of a firearm is materially different from the act of possession of firearm ammunition, even if both items are possessed simultaneously." *Supra* ¶ 48. The majority does not elaborate on what the material difference is. Further, if the majority's statement were true, it would not have been necessary for the legislature to amend the UUW by a felon statute to provide that the simultaneous possession of firearms and ammunition constitutes a single and separate violation under that statute, following our decision in *Carter*. 720 ILCS 5/24-1.1 (West 2008). Although *Carter* was not based upon one-act, one-crime principles, implicit in the court's opinion was that the act upon which the defendant's multiple convictions was based constituted a single physical act. Were it otherwise, no question would have arisen as to whether the defendant could be convicted of multiple offenses under the UUW by a felon statute for the simultaneous possession of firearms and ammunition.

¶ 85    In sum, I would hold that defendant may not be convicted under both the armed habitual criminal statute and the UUW by a felon statute of multiple offenses based upon the simultaneous possession of a firearm and of the ammunition loaded therein. These offenses are based upon a single physical act and, in the absence of a legislative provision to the contrary, defendant may be convicted of only one offense. Since armed habitual criminal is the more serious offense, defendant's conviction for UUW by a felon must be vacated.

¶ 86    Therefore, while I concur in the majority's rejection of defendant's fourth amendment challenge, I respectfully dissent from the majority's holding that defendant was properly convicted of both armed habitual criminal and UUW by a felon.