2019 IL App (1st) 162360-U

No. 1-16-2360

December 26, 2019

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 8424 |
| | ) | |
| DARNELL MCKENZIE, | ) | Honorable |
| | ) | Gregory R. Ginex, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Ellis and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's convictions for burglary and criminal damage to property are affirmed where the State presented sufficient evidence to prove beyond a reasonable doubt that he committed the offenses. Defendant's conviction for criminal damage to property did not violate the one-act, one-crime rule because it was not based on the same physical act as his conviction for burglary.

¶ 2    Following a bench trial, defendant Darnell McKenzie, proceeding *pro se*, was found guilty of burglary (720 ILCS 5/19-1(a) (West 2014)) and criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2014)). He was sentenced to concurrent terms of eight and three years'

imprisonment, respectively. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he burglarized and caused criminal damage to Angela Savage's vehicle. He also argues that his conviction for criminal damage to property must be vacated under the one-act, one-crime rule because it is based on the same physical act as his conviction for burglary. For the following reasons, we affirm.

¶ 3     Defendant was charged by indictment with burglary, theft, and criminal damage to property. As relevant here, the burglary count alleged that defendant "knowingly and without authority entered a motor vehicle *** with the intent to commit therein a theft[.]" 720 ILCS 5/19-1(a) (West 2014). The criminal damage to property count alleged that defendant "knowingly damaged the property of Angela Savage *** and the value of the damage exceeded $300.00 but did not exceed $10,000.00[.]" 720 ILCS 5/21-1(a)(1) (West 2014). The case proceeded to a bench trial on all three charges with defendant representing himself.

¶ 4     The evidence adduced at trial showed that, on March 25, 2015, about 8:00 p.m., Angela Savage parked her 2008 Honda Accord in the parking lot behind her apartment building on the 400 block of North Austin Boulevard in Oak Park. At that time, there was no damage to the vehicle and she locked it before entering her apartment. When she returned to her vehicle the following morning about 7:00 a.m., she observed that the back window on the passenger side was completely gone and the window frame appeared to have been pried open. She also saw glass on the back seat and that the contents of the glove compartment and the center console, namely compact discs (CDs) and some papers, were strewn about the interior of the vehicle. She later discovered that a recently purchased air pump for her tires was missing from her vehicle, along with her hair extensions and change from the ashtray. She then called the Oak Park police and waited for them

to arrive. Sometime later, she took her vehicle to get an estimate for the repairs, which was approximately $300 total. Savage estimated that the total cost of those missing items was $145. Finally, she testified that she did not know defendant or his twin brother, who both lived in the same apartment building as her, and did not give defendant permission to enter her vehicle or damage it in any way. Savage acknowledged that, after the incident, she received two letters mailed to her by defendant.

¶ 5    Oak Park police officer Paul Fellows, an evidence technician, testified that he was assigned to this case, and on March 26, 2015, arrived at the crime scene. There, he observed Savage and Oak Park police officer Freelain standing next to Savage's vehicle.[1] In processing the vehicle, Fellows observed that the rear passenger's side window frame was damaged and the window itself was gone. He also observed that the interior of the vehicle appeared to have been "ransacked." He photographed the interior and exterior of the vehicle. Those photographs were later admitted into evidence. Fellows checked the exterior and interior of the vehicle for fingerprints. He explained that because of the dew that had fallen overnight, there were not any fingerprints on the exterior of the vehicle. On the interior of the vehicle, he found fingerprints on two CD cases, one located on the front passenger seat floorboard and one located on the front passenger seat. He testified that many of the surfaces inside the vehicle were not good surfaces for latent fingerprints. Fellows made four fingerprint cards, and some of the cards contained multiple fingerprints. The cards were then transported to the police station and inventoried. On cross-examination, Fellows admitted that he did not know which fingerprints were associated with which CD case.

---

[1] Officer Freelain's first name does not appear in the record.

¶ 6     Charles Schauer, an expert in fingerprint analysis, testified that on March 27, 2015, he was contacted by Oak Park police detective Angelo Episcopo to review the fingerprint cards obtained in this investigation. Schauer determined that one of the fingerprints on one card and three fingerprints on another card were suitable for comparison. The suitable prints were submitted to the fingerprint database, which identified defendant. Later, the Oak Park police gave Schauer defendant's fingerprint card that was made by Detective Sperandio at the police station. After examining this card, Schauer determined that the suitable prints recovered from the CD cases were both made by defendant's right thumb. He also testified that the fingerprints of identical twins are not the same.

¶ 7     Oak Park police detective James Sperandio testified that he and Detective Episcopo were assigned to investigate this incident. During the investigation, he received information from Schauer that one of the fingerprint lifts had been identified as belonging to defendant. Sperandio located defendant who was in the custody of the Cook County Department of Corrections and, on May 13, 2015, transported him to the Oak Park police station. He then fingerprinted defendant and tendered the fingerprint card to Schauer on November 18, 2015. On cross-examination, Sperandio testified that none of Savage's belongings or any burglary tools were found in defendant's possession when he was arrested because defendant was already in custody when he was arrested and those items would not have been permitted to be in his possession while in custody. The State rested.

¶ 8     Defendant testified that he lived in the same apartment building as Savage with his twin brother, Donzell McKenzie. On March 26, 2015, about 1:00 a.m., he arrived home from work to his apartment building. His parking spot is right next to Savage's spot. When he arrived at the

parking lot, he observed mail, miscellaneous papers, and a CD case, along with some glass, laying on the ground in his parking spot and that Savage's vehicle's rear passenger's side window was broken. He exited his vehicle and picked up the mail, papers, and the CD and tossed them back into Savage's vehicle. He then proceeded to park his vehicle in his spot. After doing so, he went to a few apartments to try and learn whose vehicle it was that was burglarized. About 6:00 a.m. the next morning, defendant left his apartment to go to work and was arrested later that day on unrelated charges. He was later transported to the Oak Park police station where he spoke with a police officer about this incident. He told the officer that he did not know anything about Savage's car being broken into and asked for an attorney.

¶ 9    Defendant testified that he did not understand how Savage did not know who he and his twin brother were or that they lived in the same apartment building. He acknowledged that he wrote her a letter telling her that he lived in the building and how his fingerprints were found on the CD case. In the letter, defendant also stated that on the night in question he was going to call the police but it was late and he was tired. He also wrote a second letter to Savage, in which he offered to pay her $400 even though he asserted that he did not burglarize the vehicle. In one of the letters, he asked her to drop all charges against him.

¶ 10    On cross-examination, defendant testified that he did not touch Savage's vehicle while tossing the items back into it. All of the items, including two or three CD cases, that he tossed into her vehicle landed on the front seat. At the police station, defendant was read his *Miranda* rights and signed a form acknowledging that he understood those rights before he spoke with Detective Episcopo. Defendant confirmed that he never told the police that he picked up the items and tossed

them into Savage's vehicle. Defendant stated that he denied everything to the police because he did not have an attorney but told his family what he had done.

¶ 11 In rebuttal, Detective Episcopo testified that on May 13, 2015, he and Detective Sperandio spoke with defendant after he was taken into custody for this case. After advising defendant of his *Miranda* rights, Episcopo showed defendant photographs of Savage's vehicle and asked him if he had burglarized it. Defendant told him that he did not and denied any involvement in the burglary. Defendant also told him that his brother might have given Savage a CD and that is how his fingerprints were found inside the vehicle. Episcopo also confirmed that defendant did not tell him that he arrived home after work, observed the damage to Savage's vehicle, and tossed some items back into it.

¶ 12 The State admitted into evidence certified copies of defendant's convictions for theft and possession of a stolen motor vehicle.

¶ 13 The trial court found defendant guilty of burglary and criminal damage to property and not guilty of theft. In announcing its ruling, the court noted that the physical evidence showed there was "in fact, a break in, there was damage to the car, and there was, in fact, the defendant's print on a CD case which was found in the front of the car." The court explained that photographs of the inside of the car contradicted defendant's claim that he tossed the items into the car because the items "wouldn't fall in the pattern as depicted in [the photographs] on the front seat." The court also pointed out that if defendant picked up the items, including the mail that was present, he would know who owned the car. Finally, the court noted that defendant initially told police that his brother may have picked up the CD and not that he did it as a good Samaritan.

¶ 14    Defendant moved for a new trial, which the court denied. After a hearing, the court sentenced defendant to eight years' imprisonment for burglary and three years' imprisonment for criminal damage to property, to be served concurrently.

¶ 15    On appeal, defendant first argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that he committed burglary and criminal damage to property. When faced with a challenge to the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the State, any rational trier of fact could find all the elements of the crime proven beyond a reasonable doubt." *People v. White*, 2017 IL App (1st) 142358 ¶ 14. "All reasonable inferences from the evidence must be drawn in favor of the prosecution." *People v. Hardman*, 2017 IL 121453 ¶ 37. It is the fact finder's role "to assess the credibility of witnesses, weigh and resolve any conflicts in the evidence, and draw reasonable conclusions from the evidence." *People v. Church*, 2017 IL App (5th) 140575 ¶ 21. For that reason, upon review, we will not substitute our judgment for that of the fact finder. *People v. Simpson*, 2015 IL App (1st) 130303 ¶ 44. However, the great deference given to the trier of fact's determinations is not without limits; the reviewing court may reverse a conviction where the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *People v. Wheeler*, 226 Ill. 2d 92, 115 (2007).

¶ 16    To sustain a conviction for burglary, the evidence must establish beyond a reasonable doubt that defendant knowingly and without authority entered Savage's vehicle with the intent to commit a theft. 720 ILCS 5/19-1(a) (West 2014). To sustain a conviction for criminal damage to property, the evidence must establish beyond a reasonable doubt that defendant knowingly damaged the

property of Savage and that the value of the damage exceeded $300. 720 ILCS 5/21-1(a)(1) (West 2014).

¶ 17    Defendant does not dispute the elements of either offense. The parties also do not dispute that a crime occurred here. See *People v. Ehlert*, 211 Ill. 2d 192, 202 (2004) (stating that proof of an offense requires proof that a crime occurred and that it was committed by the person charged). Rather, defendant only challenges the sufficiency of the evidence to prove beyond a reasonable doubt that he was the one who committed the burglary and criminal damage to property.

¶ 18    "Circumstantial evidence is sufficient to sustain a conviction if it satisfies proof beyond a reasonable doubt of the elements of the crime charged." *People v. Gomez*, 215 Ill. App. 3d 208, 216 (1991). Fingerprints are considered circumstantial evidence. *People v. Rhodes*, 85 Ill. 2d 241, 249 (1981). Our supreme court has held that to sustain a conviction based "solely on fingerprint evidence," the fingerprints must have been found in the immediate vicinity of the crime and under such circumstances as to establish beyond a reasonable doubt that it was impressed at the time of the crime. *Id.*; see also *People v. Dotson*, 263 Ill. App. 3d 571, 574 (1994). Stated differently, the fingerprints must meet both physical and temporal proximity criteria. *Gomez*, 215 Ill. App. 3d at 216. Additionally, the State is not required to seek out and negate every possibility that a fingerprint was left at another time. *People v. Campbell*, 146 Ill. 2d 363, 387 (1992).

¶ 19    Here, after viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could conclude that defendant was the offender. That is to say that the surrounding circumstances support the inference that defendant impressed his fingerprints on the CD case at the time he broke into Savage's vehicle and burglarized it. Savage testified at trial that she did not know defendant prior to defendant's involvement in this case and that she did not give

defendant authority to enter her vehicle. She also testified that she secured her vehicle and the CD cases were located either in the glove compartment or the center console when she exited her vehicle on the night of March 25, 2015. On the following day, an evidence technician processed the vehicle and defendant's fingerprints were recovered from a CD case inside the vehicle. We agree with the State that there was sufficient circumstantial evidence for the trial court to infer from the location of the fingerprint that defendant had committed burglary and criminal damage to property.

¶ 20    Nevertheless, defendant contends that his explanation of how his fingerprints came to be on the CD cases was improperly rejected by the trial court as not credible and that the trial court made "many unreasonable assumptions" in its ruling. Defendant essentially asks this court to reassess the credibility of the witnesses and reweigh the evidence presented at trial. This we cannot do. See *People v. Abdullah*, 220 Ill. App. 3d 687, 693 (1991) ("A reviewing court has neither the duty nor the privilege to substitute its judgment for that of the trier of fact"). As stated previously, it is the trier of fact's role to determine the credibility of witnesses and the weight to be given to their testimony and to resolve any inconsistencies and conflicts in the evidence. *Church*, 2017 IL App (5th) 140575, ¶ 21; *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006).

¶ 21    In announcing its ruling, the court noted that defendant's explanation regarding his fingerprint on the CD case lacked credibility and reliability for several reasons: (1) defendant initially told the police that his brother might have given Savage the CD case and failed to inform police of his explanation presented at trial; (2) defendant did not call the police when he was allegedly being a "good Samaritan" and he did not look at any of the mail to find the owner's address; (3) it was unlikely for the items to fall in the pattern depicted in the photographs if

defendant had tossed them into the vehicle through the rear passenger's side window; (4) defendant's offer to pay for the damage appeared incongruous with defendant's claim of innocence; and (5) defendant's prior convictions affect his credibility as a witness. See *People v. Luckett*, 339 Ill. App. 3d 93, 103 (2003) (stating that a defendant's credibility, like that of any witness, is a question for the trier of fact). As the trier of fact, the trial judge permissibly resolved the conflicts in evidence, determined the credibility of the witnesses, and ultimately, found defendant's explanation to be incredible. This court will not reverse a conviction unless the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of defendant's guilt." *Wheeler*, 226 Ill. 2d 115. This is not one of those cases.

¶ 22    Moreover, that conclusion is not called into doubt simply because defendant was not in possession of any of the stolen property or any burglary tools at the time he was taken into custody. The record shows that defendant was already in custody on an unrelated charge, which would prevent him from having any such items in his possession, and he was not taken into custody for this crime until over a month after the incident occurred. Accordingly, our conclusion that there was sufficient evidence to find that defendant committed these crimes is not altered.

¶ 23    We also find defendant's reliance on *Gomez* unpersuasive. There, the defendant's fingerprint was found in the kitchen of the murder victim, who was also his landlord. *Gomez*, 215 Ill. App. 3d at 211. The reviewing court concluded that the fingerprint evidence was insufficient to sustain his conviction because the defendant had been in the kitchen previously in order to pay his rent. *Id.* at 216-17. Here, given that Savage did not know defendant, he did not have any reason to be in Savage's vehicle on any prior occasion, and the trial court found his testimony to be unreliable and his explanation to be improbable. See *People v. Elston*, 223 Ill. App. 3d 186, 189

("The trial court is free to reject a defendant's improbable explanation of how his fingerprints could have been at the scene of the crime without criminal involvement."). Thus, after viewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence to prove beyond a reasonable doubt that defendant burglarized and caused criminal damage to Savage's vehicle.

¶ 24    Defendant next argues that his convictions violate the one-act, one-crime rule espoused in *People v. King*, 66 Ill. 2d 551 (1977). Defendant contends that his conviction for criminal damage to property must be vacated because that conviction is predicated on the same physical act as his burglary conviction. The State argues that defendant committed two separate acts and his convictions should be affirmed.

¶ 25    In setting forth his argument, defendant concedes that he failed to raise this issue in the trial court and requests that we review it under the plain error doctrine. A plain error is a clear and obvious error that (1) occurred when the evidence was so closely balanced that the error alone threatened to change the result or (2) was so serious that it affected the fairness of the defendant's trial and challenge the integrity of the judicial process. *People v. Sebby*, 2017 IL 119445, ¶ 48. Because " 'an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process[,]' " it may be reviewed under plain error. *People v. Artis*, 232 Ill. 2d 156, 167-68 (2009) (quoting *People v. Harvey*, 211 Ill. 2d 368, 389 (2004)). Therefore, we will consider whether defendant's criminal damage to property conviction violates the one-act, one-crime rule. See *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 26    Our supreme court has held that a defendant cannot be convicted of multiple offenses based on the same physical act. *People v. Almond*, 2015 IL 113817, ¶ 47 (citing *King*, 66 Ill. 2d at 566).

- 11 -

The word "act," as it relates to this rule, is defined as "any overt or outward manifestation that will support a separate conviction." *Id.* To determine whether a violation of the one-act, one-crime doctrine has occurred, we must perform a two-step analysis. *People v. Coats*, 2018 IL 121926, ¶ 12. First, we must determine whether the conduct constitutes multiple acts or one single act. *Id.* Second, even if the conduct involved multiple acts, we must then determine whether one offense is a lesser included offense of the other. *Id.* Whether a conviction should be vacated pursuant to the one-act, one-crime rule is a question of law to be reviewed *de novo*. *Id.*

¶ 27    We agree with the State and find that defendant's commission of burglary and criminal damage to property involved multiple acts. Here, based on the evidence in the record, defendant caused the damage to Savage's property by breaking her rear passenger's side window on her vehicle. Defendant, then, entered Savage's vehicle with the intent to commit a theft. These are distinct, separate acts. Additionally, we note that the charging instruments alleged separate physical acts: (1) damaging Savage's vehicle and (2) entering her vehicle without authority and with the intent to commit a theft therein. See *People v. Kotero*, 2012 IL App (1st) 100951, ¶ 22 (stating that the court must look at the charging instruments to determine whether the separate offenses are based on the same physical act). Accordingly, the convictions were not predicated upon the same physical act under the one-act, one-crime rule. See *People v. Lee*, 2012 IL App (1st) 101851, ¶ 54.

¶ 28    Because there were multiple acts, we must now decide whether criminal damage to property is a lesser included offense of burglary. We find that it is not. To make such a determination, we employ the abstract elements approach. Under this approach, we compare the statutory elements of the offenses. *People v. Miller*, 238 Ill. 2d 161, 166 (2010). "If all of the

elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* As stated above, criminal damage to property requires that an individual knowingly damage the property of another, whereas burglary requires that an individual knowingly and without authority enter the vehicle of another with the intent to commit theft therein. It is clear that criminal damage to property and burglary involve different elements. Accordingly, we conclude defendant's convictions for both criminal damage to property and burglary do not violate the one-act, one-crime rule.

¶ 29    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 30    Affirmed.