2021 IL App (2d) 181040
No. 2-18-1040
Opinion filed March 26, 2021

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | No. 16-CF-1556 |
| v. | ) ) | |
| GREGORY A. ROLLINS, | ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Brennan concurred in the judgment and opinion.
Justice Brennan also specially concurred, with opinion.

**OPINION**

¶ 1                                    I. INTRODUCTION

¶ 2     Following a bench trial on stipulated evidence, defendant, Gregory A. Rollins, was convicted of one count of child photography by a sex offender. He now appeals, arguing that section 11-24 of the Criminal Code of 2012 (Code) (720 ILCS 5/11-24 (West 2016))—the statute under which he was convicted—is unconstitutional on first amendment grounds (U.S. Const., amend. I). For the reasons that follow, we affirm.

¶ 3                                    II. BACKGROUND

¶ 4    The facts underlying this appeal are brief and undisputed. Defendant was indicted on four counts of child photography by a sex offender. 720 ILCS 5/11-24 (West 2016). Defendant moved to dismiss the charges, alleging that section 11-24 violated his rights under the first amendment. Defendant cited *Wisconsin v. Oatman*, 2015 WI App 76, 365 Wis. 2d 242, 871 N.W.2d 513, where a Wisconsin reviewing court held unconstitutional a statute bearing some similarities to the statute at issue here. The trial court dismissed the motion. It first found that section 11-24 drew a distinction based on content, as it applied only to photographs *of children*; consequently, it found that the statute was subject to strict scrutiny. It further found that the State had a compelling interest in protecting children from sex offenders. The trial court interpreted the statute to apply where a sex offender knowingly takes a picture of a child and held that it did not apply where a sex offender incidentally photographed a child who was in the background of an otherwise innocent photograph. It further observed that the statute applied only to sex offenders rather than the public at large. The trial court thus determined that the statute was narrowly tailored. It further found that the statute did not offend substantive due process.

¶ 5    Although defendant initially was indicted on four counts, the State nol-prossed all but the first count. At defendant's bench trial, the parties stipulated to the following.

¶ 6     First, the State would introduce a certified copy of defendant's conviction of predatory criminal sexual assault and establish that defendant was required to register for life as a sex offender.

¶ 7    Second, Buffalo Grove police officer Brian Hansen would testify that, on May 31, 2016, he received information that photographs of a fully clothed child were taken at MIR Tactical in Buffalo Grove. Hansen obtained surveillance footage showing two men interacting with a father

and his two children. One of the two men, later identified as defendant, used his cell phone during the interaction.

¶ 8    Third, Hansen made contact with defendant and brought defendant to the Buffalo Grove Police Department. After being Mirandized (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant admitted taking photographs of a child without the consent of the child's parents. Defendant told Hansen that he uploaded the photographs to a cloud-based account where he could view them later before deleting them from his phone. Defendant stated that he was aware that he could not possess such photographs and that he was able to share them from the cloud-based account. Defendant provided Hansen with his username and password to the cloud-based account. Hansen logged in to the account and observed an image labelled "Airsoft-Angel." The image depicted the child and defendant acknowledged that it was the photograph taken without parental consent referenced in the first count of the indictment.

¶ 9    Fourth, the father of the child would testify that the child was born in 2002. The father had been with his two sons at MIR Tactical. They had previously met defendant and defendant's brother and had played Airsoft with them. Airsoft is a team game using Airsoft guns. Defendant's brother asked the father for his phone number so that they could play Airsoft in the future.

¶ 10    Fifth, the father would identify the photograph labelled "Airsoft-Angel" as depicting the child, his son. He never gave defendant permission to photograph the child.

¶ 11    The trial court found defendant guilty. It imposed a sentence of five-years' imprisonment, as agreed by the parties. Defendant then filed a motion for judgment notwithstanding the finding of the trial court or, alternatively, a new trial. In it, he asserted that the court erred in denying his motion to find section 11-24 of the Code unconstitutional. Defendant's motion was denied, and this appeal followed.

¶ 12                                    III. ANALYSIS

¶ 13    Defendant argues that section 11-24 of the Code (720 ILCS 5/11-24 (West 2016)) is unconstitutional on its face and as applied to him. In addressing defendant's argument that the statute is unconstitutional, we must first determine the level of scrutiny to which the statute is subject. Next, we must determine whether it passes constitutional muster under that standard.

¶ 14    Section 11-24 provides as follows:

"§ 11-24. Child photography by sex offender.

(a) In this Section:

'Child' means a person under 18 years of age.

'Child sex offender' has the meaning ascribed to it in Section 11-0.1 of this Code.

(b) It is unlawful for a child sex offender to knowingly:

(1) conduct or operate any type of business in which he or she photographs, videotapes, or takes a digital image of a child; or

(2) conduct or operate any type of business in which he or she instructs or directs another person to photograph, videotape, or take a digital image of a child; or

(3) photograph, videotape, or take a digital image of a child, or instruct or direct another person to photograph, videotape, or take a digital image of a child without the consent of the parent or guardian.

(c) Sentence. A violation of this Section is a Class 2 felony. A person who violates this Section at a playground, park facility, school, forest preserve, day care facility, or at a facility providing programs or services directed to persons under 17 years of age is guilty of a Class 1 felony." *Id.*

¶ 15    Statutes are presumed constitutional, and the party challenging the statute's constitutionality bears the burden of clearly showing its invalidity. *People v. Austin*, 2019 IL 123910, ¶ 14. Whether a statute is unconstitutional presents a question of law, subject to *de novo* review. *People v. Gray*, 2017 IL 120958, ¶ 57. A party alleging that a statute is facially unconstitutional on first amendment grounds must show that " 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.' " *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Conversely, an as-applied challenge requires a party to show that the statute is being unconstitutionally applied under the facts and circumstances of the given case. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 520 (1996). With these standards in mind, we turn to defendant's arguments.

¶ 16                                A. Level of Scrutiny

¶ 17    As a threshold matter, we must first determine the appropriate level of scrutiny to which section 11-24 is subject. A statute subject to strict scrutiny will be upheld only if it is narrowly tailored to serve a compelling governmental interest. *In re Amanda D.*, 349 Ill. App. 3d 941, 951 (2004). Put differently, the statute must use the " 'least restrictive means' " to promote such an interest. *In re H.G.*, 197 Ill. 2d 317, 330 (2001) (quoting *In re R.C.*, 195 Ill. 2d 291, 303 (2001)). On the other hand, intermediate scrutiny simply requires that a statute "must be substantially related to an important governmental interest." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 308 (2008). The law need not be the least restrictive means to advance that important interest, so long as the important interest "would be achieved less effectively absent the law." *Austin*, 2019 IL 123910, ¶ 70.

¶ 18    As the parties recognize, the determinative factor as to what level of scrutiny applies is whether section 11-24 is content neutral. If it is, then intermediate scrutiny applies; if not, then strict scrutiny is required. *Id.* ¶¶ 40, 43. Defendant argues, and the trial court agreed, that strict scrutiny was appropriate, noting that the statute "specifically restricts only photographs of children taken by sex offenders." The State counters that not "every regulation of speech that makes reference to content is 'content based.' " We agree with the State.

¶ 19    Generally, a statute that "regulates speech or conduct 'based on hostility—or favoritism— toward the underlying message expressed' is content-based." *Norton v. Ashcroft*, 298 F.3d 547, 552 (6th Cir. 2002) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992)). There is no indication here that section 11-24 is motivated by a desire to suppress ordinary pictures of children, and defendant points to nothing to substantiate such a proposition. Indeed, not all pictures of children are restricted. Instead, the concern motivating the legislature appears to have been how the picture was produced, that is, by a child-sex offender without parental consent. See 93d Ill. Gen. Assem., House Proceedings, Mar. 25, 2004, at 113 (statements of Representative Parke) ("People who are sex offenders are... are almost entirely told to stay away from children and these pedophiles know that. Unfortunately, in the State of Illinois some still can engage in the business of photography or video tapes or taking images of children in stores or other things. This Bill simply says that if you are a se... a child sex offender that you cannot take pictures or video tapes or take images of children whether it's at a retail store or it's on the street. They are not allowed to do that and they have to stay away from children."). This suggests that section 11-24 is content neutral. See *XLP Corp. v. County of Lake*, 359 Ill. App. 3d 239, 246 (2005) ("Though it may seem peculiar, whether an ordinance is content-based is a matter of legislative intent."); see also *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440-41 (2002) (holding that the inquiry into

whether an ordinance is content neutral requires a court to consider whether it is primarily directed to regulating the secondary effects of speech).

¶ 20　Nevertheless, as defendant points out, the speech to be regulated is identified based on its content, *i.e.*, it pertains to images "of a child." We do not believe that this elevates section 11-24 to being a content-based restriction. In *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 52 (1976) (plurality opinion), the United States Supreme Court considered the constitutionality of a Detroit, "Anti-Skid Row" ordinance that provided that an adult theater could not be located within 1000 feet of two other "regulated uses" or within 500 feet of a residential area. A theater is deemed an adult establishment if it presents material that emphasizes " ' "Specified Sexual Activities" ' " or " ' "Specified Anatomical Areas." ' " *Id.* at 53. The Supreme Court began its analysis with the recognition that "[z]oning ordinances adopted by the city of Detroit differentiate between motion picture theaters which exhibit sexually explicit 'adult' movies and those which do not." *Id.* Thus, the theaters to be regulated were clearly identified by the content of the films they showed.

¶ 21　However, the Supreme Court also recognized that, "[e]ven within the area of protected speech, a difference in content may require a different governmental response." *Id.* at 66. It noted that, for example, the scope of a law prohibiting the sale of nonobscene, sexually oriented material to a minor was determined by the content of the material. *Id.* at 69. It observed, "Surely the First Amendment does not foreclose such a prohibition; yet it is equally clear that any such prohibition must rest squarely on an appraisal of the content of material otherwise within a constitutionally protected area." *Id.* at 69-70. Regarding Detroit's ordinance, it held, "Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification from other motion pictures." *Id.* at 70-71. In accordance with *Young*, the mere fact

that the material to be regulated here is identified by content—so long as no hostility to that content is evident—does not mean that the statute at issue here is not content neutral.

¶ 22    Further guidance can be found in the recent Illinois Supreme Court case of *Austin*, 2019 IL 123910. There, the court considered the constitutionality of a statute prohibiting the "nonconsensual dissemination of private sexual images," which is sometimes referred to as " 'revenge porn.' " *Id.* ¶ 17. In *Austin*, the trial court found that the restriction at issue was content based, because it did not target all images and instead restricted only the dissemination of images showing sexual activity or nudity. *Id.* ¶ 41. This finding is analogous to defendant's position (with which the trial court agreed) in this case that section 11-24 is not content neutral, because it pertains only to images of children. The supreme court rejected the trial court's finding in *Austin*, explaining that the revenge-porn statute was a "content-neutral time, place, and manner restriction" and that it "regulates a purely private matter." *Id.* ¶ 43.

¶ 23    Pertinent here is the supreme court's analysis of the revenge-porn statute as a time, place, or manner restriction. The court noted, "Laws that 'impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral.' " *Id.* ¶ 45 (quoting *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 643 (1994)). It added, " 'The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.' " *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). A regulation " 'is content neutral so long as it is *justified* without reference to the content of the regulated speech.' " (Emphasis in original.) *Id.* (quoting *Ward*, 491 U.S. at 791). The court acknowledged that the revenge-porn statute targeted "the dissemination of a specific category of speech—sexual images"; nevertheless, it deemed the

statute content neutral. *Id.* ¶ 46. The court added, " 'A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.' " *Id.* (quoting *Ward*, 491 U.S. at 791). Thus, "the proper focus is on whether the government has addressed a category of speech to suppress discussion of that topic." *Id.* ¶ 48.

¶ 24 Regarding the revenge-porn statute, the supreme court noted that it was "justified on the grounds of protecting privacy." *Id.* ¶ 49. It observed that the statute

"distinguishes the dissemination of a sexual image not based on the content of the image itself but, rather, based on whether the disseminator obtained the image under circumstances in which a reasonable person would know that the image was to remain private and knows or should have known that the person in the image has not consented to the dissemination." *Id.*

The court explained, "The *manner* of the image's acquisition and publication, and not its *content*, is thus crucial to the illegality of its dissemination." (Emphases in original.) *Id.* Accordingly, the court held that the revenge-porn statute was content neutral and subject to intermediate scrutiny. *Id.* ¶ 51.

¶ 25 We conclude that section 11-24 is similarly content neutral. It is true that the content of the photographs at issue in this case define the subject matter to be regulated, that is, the subject matter to be regulated is the taking of photographs of children. However, there is no indication that the legislature was motivated by any hostility toward photographs with such content. This is made clear by the fact that a child-sex offender taking the very same photograph would not be subject to criminal liability if a parent had consented. The *Austin* court came to a nearly identical conclusion. See *id.* ¶ 49 ("There is no criminal liability for the dissemination of the very same image obtained

and distributed with consent."). Rather, similar to the statute at issue in *Austin*, which was directed to the circumstances of an image's dissemination rather than its content (*id.*), section 11-24 is concerned with the manner in which a photograph of a child was produced, *i.e.*, by a child-sex offender without parental consent. In other words, this is a *manner* restriction.

¶ 26   Therefore, as a time, place, or manner restriction that is content neutral, section 11-24 is subject to intermediate scrutiny. *Id.* ¶ 43.

¶ 27                                    B. Intermediate Scrutiny

¶ 28   We now turn to the question of whether section 11-24 withstands intermediate scrutiny. This level of scrutiny requires a statute to "be substantially related to an important governmental interest." *Napleton*, 229 Ill. 2d at 308.

¶ 29                                    1. *Important Interest*

¶ 30   As a preliminary matter, it is beyond question that the government's interest in protecting children from sex offenders is substantial (compelling even). *People v. Minnis*, 2016 IL 119563, ¶ 37. Indeed, our supreme court has stated, "[I]t is clear that state legislatures may respond to what they reasonably perceive as a 'substantial risk of recidivism.' " (Emphasis omitted.) *People v. Huddleston*, 212 Ill. 2d 107, 138 (2004). Thus, the government was clearly acting to advance an interest of sufficient magnitude when it enacted section 11-24.

¶ 31   Defendant contends that the statute "fails to serve an important, substantial government interest," because any "causal link between images and actual instances of child abuse" is "contingent" and "indirect." See *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 250 (2002). This argument does not actually implicate the magnitude of the interest served by the statute; rather, it concerns whether the regulation imposed (a prohibition on child-sex offenders taking photographs of children without parental consent) serves that interest in a meaningful way, that is,

whether it is substantially related to that interest. Such concerns would be better addressed in the substantial-relationship portion of the analysis. The sufficiency of the government's interest in protecting children from sex offenders is beyond dispute. *New York v. Ferber*, 458 U.S. 747, 757 (1982).

¶ 32                    2. *Substantial Relationship*

¶ 33     The question remains as to the adequacy of the relationship between prohibiting child-sex offenders from taking photographs of children without parental consent and the protection of children from such offenders. Defendant brings both a facial and an as-applied challenge. As noted, since we are applying intermediate scrutiny here, section 11-24 will survive if the important interest "would be achieved less effectively absent the law." *Austin*, 2019 IL 123910, ¶ 70. It must not burden substantially more speech than necessary and must allow reasonable alternative avenues of communication. *Id.* ¶ 59.

¶ 34     Defendant contends that the statute burdens a substantial amount of protected speech. The State asserts that section 11-24 is substantially related to the goal of protecting children from child-sex offenders. It notes that the statute applies only to those convicted of a sex offense involving a child and only to photographs in which the child is the focus. Moreover, the statute permits an alternative way in which a child-sex offender could legally take such a photograph in that the offender could seek parental consent. Additionally, the statute does not require the child-sex offender to disclose that status when seeking such consent.

¶ 35     We now turn to defendant's specific challenges.

¶ 36                    a. Facial Challenge

¶ 37     Defendant contends that section 11-24 is facially unconstitutional. In the context of the first amendment, a facial challenge is an overbreadth challenge. See *People v. Clark*, 2014 IL

115776, ¶ 11. A statute is overbroad "if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* This is particularly true regarding a statute that imposes criminal sanctions. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). Where a statute is readily susceptible to a limiting construction, a court may construe the statute in such a manner as to resolve any constitutional doubts. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 884 (1997). Indeed, a court "has a duty to construe the statute in a manner that upholds the statute's validity and constitutionality if reasonably possible." *People v. Relerford*, 2017 IL 121094, ¶ 30; see also *Austin*, 2019 IL 123910, ¶ 14 ("[A] court must construe a statute so as to uphold its constitutionality, if reasonably possible.").

¶ 38 Defendant relies heavily on *Oatman*, 2015 WI App 76, in arguing that section 11-24 is unconstitutional. In *Oatman*, a Wisconsin appellate court evaluated a statute bearing some similarities to the statute at issue here and determined that it was overbroad. The statute stated, " 'A sex offender may not intentionally capture a representation of any minor without the written consent of the minor's parent, legal custodian, or guardian.' " *Id.* ¶ 9 (quoting Wis. Stat. § 948.14(2)(a) (2013-14)). However, we note that the precedential value of *Oatman* is limited here because, as we explain below, *Oatman* is distinguishable. Moreover, the *Oatman* court applied the strict-scrutiny standard (*id.* ¶ 12), while we have determined that intermediate scrutiny is appropriate. In any event, as defendant points out, the *Oatman* court held that the statute at issue in that case "does little, if anything, to further [the State's] interest." *Id.* ¶ 13

¶ 39 The Wisconsin court noted the broad sweep of the statute that was before it: "it is difficult to imagine a content-based regulation that would be more broadly tailored." (Emphasis omitted.) *Id.* ¶ 17. It further found the overbreadth substantial because "the statute applies to capture of nearly all images of children in public places." *Id.* ¶ 18. Finally, the court noted that the State did

not argue that the statute was susceptible to a limiting construction and that the court did not "discern any appropriate modification available to save the statute." *Id.* ¶ 19. If we were to construe section 11-24 as broadly as the statute at issue in *Oatman*, we might find that case more analogous. However, the State asserts, and we agree, that the statute at issue here is amenable to a limiting construction.

¶ 40    Indeed, defendant construes the statute broadly. He contends that the plain language of section 11-24 "forecloses anyone who previously was convicted of a child sex offense, absent the requisite consent, from photographing or video recording *any child in any situation*." (Emphasis in original.) Defendant also points out, "If a child sex offender wants to take a photograph at a school sporting event, at Disneyland, at a concert, or in any other public setting where multiple children might be present, the offender would be required to obtain consent from the parents of all of the children who would be in the photo." Moreover, if one child's parent were unavailable, a child-sex offender could not photograph a group of children even if all other parents had given consent.

¶ 41    The State acknowledges that applying the statute broadly could raise certain constitutional issues, for example, where a child is unintentionally caught in the background of a photograph. Hence, it proposes a limiting construction. The plain language of the statute states, in pertinent part, "It is unlawful for a child sex offender to knowingly *** photograph, videotape, or take a digital image *of a child*." (Emphasis added.) 720 ILCS 5/11-24(b)(3) (West 2016). The State asserts that the phrase "of a child" should be construed "to apply only to photographs in which the child is a subject or focus of the image rather than every photograph that incidentally includes a minor somewhere in the background."

¶ 42    We find the State's position well taken. As the State notes, a common definition of the word "of" is, "used as a function word indicating the object of an action denoted or implied by the preceding noun." See *Webster's Third New International Dictionary* 1565 (2002). Thus, interpreting a photograph *of* a child to refer to a photograph in which the child is the object or focus of the photograph comports with the plain meaning of the word "of." This interpretation finds further support in the fact that section 11-24 applies only where a child-sex offender *knowingly* takes such a photograph. A child who is incidentally caught in the background likely was not knowingly included in the photograph. Thus, for the purpose of resolving this appeal, we will construe the statute in the manner advocated by the State.

¶ 43    Parenthetically, we note that this construction distinguishes the instant case from *Oatman*, 2015 WI App 76. The statute at issue in *Oatman* did not simply prohibit a sex offender from taking a photograph *of a child*; rather, it stated, " 'A sex offender may not intentionally capture a representation of any minor without the written consent of the minor's parent, legal custodian, or guardian.' " *Id.* ¶ 9 (quoting Wis. Stat. § 948.14(2)(a) (2013-14)). The phrase "capture a representation of any minor" would seem to include when minors appear incidentally in the background of a photograph. Moreover, the inclusion of the word "any" also broadens the plain meaning of that statute. Unlike the statute at issue in *Oatman* (*id.* ¶ 19), section 11-24 is amenable to a limiting construction, making *Oatman* distinguishable.

¶ 44    In addition, the *Oatman* court found that the statute could be counterproductive in that, if who a child's parents are is not apparent, the sex offender would have to approach the child and inquire. *Id.* ¶ 13. However, we believe that addressing such concerns is an issue best left to the wisdom of the legislature. In *Young*, 427 U.S. 50, and *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), the Supreme Court addressed statutes designed to curb the secondary effects

of "adult" theaters. In the former case, a Detroit ordinance attempted to reduce such effects by dispersing the theaters throughout the community (thus preventing the development of a "skid row"); in the latter, the city attempted to mitigate those effects by concentrating the adult uses in a limited area. The Supreme Court held:

> "We also find no constitutional defect in the method chosen by Renton to further its substantial interests. Cities may regulate adult theaters by dispersing them, as in Detroit, or by effectively concentrating them, as in Renton. 'It is not our function to appraise the wisdom of [the city's] decision to require adult theaters to be separated rather than concentrated in the same areas. . . . [T]he city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.' " *Renton*, 475 U.S. at 52 (quoting *Young*, 427 U.S. at 71).

¶ 45     As defendant further points out, *Oatman* relied on *Ashcroft*, 535 U.S. 234, which struck down as overbroad certain statutes attempting to regulate virtual child pornography. The *Ashcroft* court relied on the fact that no actual children are harmed in the making of virtual child pornography. *Oatman*, 2015 WI App 76, ¶ 15 (citing *Ashcroft*, 535 U.S. at 241, 249-50). While true, we note an important difference between *Ashcroft* and this case. The production of virtual child pornography involves no child at any point. Moreover, the *Ashcroft* court found that it was not enough of a justification that virtual child pornography might whet the appetite of pedophiles. *Ashcroft*, 535 U.S. at 253. It explained, "The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it." *Id.* However, in this case, an actual convicted child-sex offender took a photograph of an actual child. Thus, the potential dangers at issue in the instant case were not present in *Ashcroft* and are not reflected in the two rationales set forth above.

Moreover, *Ashcroft* involved the overbreadth doctrine and did not consider whether the restrictions at issue in that case survived intermediate scrutiny. See *id.* at 258.

¶ 46     Furthermore, as the trial judge recognized, there are several important differences between the statute at issue in *Oatman* and section 11-24. First, as explained above and unlike the present case, the *Oatman* court confronted a statute that was not amenable to a limiting construction.

¶ 47     Second, the statute in *Oatman* applied to sex offenders generally while section 11-24 applies only to child-sex offenders. Compare 720 ILCS 5/11-24 (West 2016), with Wis. Stat. § 948.14(2) (2013-14). This obviously narrows the scope of section 11-24 relative to the Wisconsin statute. Defendant complains that child-sex offenders nevertheless retain their first amendment rights. While we cannot take issue with this argument, the object of our analysis is to determine whether the government could legitimately limit those rights. The theater owners in *Young* and *Renton* certainly had rights under the first amendment. The point of those cases is that those rights could be limited if a regulation were substantially related to an important governmental interest. Thus, the mere fact that child-sex offenders retain first amendment rights does not control the resolution of this case.

¶ 48     Third, the Wisconsin statute required a sex offender to get permission from a parent in writing after having identified himself or herself as a registered sex offender. See Wis. Stat. § 948.14(2) (2013-14). Conversely, section 11-24 requires only verbal consent and does not require the person seeking consent to disclose that he or she is a child-sex offender. Thus, section 11-24's provisions pertaining to consent are much less onerous than those in the Wisconsin statute. The extent to which a regulation allows reasonable alternative avenues of communication is relevant here. *Austin*, 2019 IL 123910, ¶ 59. Section 11-24, therefore, provides a much less

burdensome process by which a child-sex offender could obtain consent to take a photograph of a child.

¶ 49    Hence, we find *Oatman* to be of limited guidance. The language and mechanics of section 11-24 and the Wisconsin statute are significantly different. Further, the *Oatman* court was applying strict scrutiny, and we have determined that intermediate scrutiny is appropriate.

¶ 50    Defendant also relies on *State v. Bonner*, 61 P.3d 611 (2002), and *Ex Parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014). In *Bonner*, 61 P.3d at 613, the court found unconstitutional a criminal statute that made it illegal for any individual at least five years older than a minor aged 16 or 17 to photograph the minor with the intent of arousing the lust, passion, or sexual desire of any person. Notably, the Idaho statute applied to any person, so its sweep was much broader, as section 11-24 applies only to convicted child-sex offenders. In *Thompson*, 442 S.W.3d at 330, 333, the Texas statute at issue prohibited taking a photograph of anyone by anyone without the other's consent and with the intent to arouse or gratify the sexual desire of anyone. Again, the scope of the Texas statute was significantly greater than that of the statute at issue here. As such, these cases are distinguishable and of little guidance.

¶ 51    Defendant complains that section 11-24 impacts the rights of all child-sex offenders, without any assessment of individual risk. However, our supreme court has already held that "state legislatures may respond to what they reasonably perceive as a 'substantial risk of recidivism.' " *Huddleston*, 212 Ill. 2d at 138. Moreover, when a statute is subject to intermediate scrutiny, it is not necessary that it apply the least restrictive means to address a problem. *Austin*, 2019 IL 123910, ¶ 70. As such, there is no need for such an individual assessment for the statute to withstand constitutional scrutiny.

¶ 52    Accordingly, we cannot hold that section 11-24 is overbroad. To invalidate a statute on overbreadth grounds, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Typically, the overbreadth doctrine is applied "sparingly and only as a last resort." *Id.* at 613. Where the overbreadth is not substantial, "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Id.* at 615-16. Such is the case here. Given the supreme court's sanctioning of legislative action based on a "reasonably perceive[d]" " 'substantial risk of recidivism' " (*Huddleston*, 212 Ill. 2d at 138), we must conclude that the class of people constituting child-sex offenders is an adequate proxy to identify individuals from whom children need to be protected. As the State aptly notes,

> "The vast majority of the statute's applications are constitutional because by requiring a convicted child sex offender to obtain the permission of a child's parent or guardian before photographing that child, section 11-24(b)(3) will in the vast majority of circumstances advance the State's compelling interest in protecting minors from recidivist child sex offenders by alerting their parents that an individual is seeking to photograph or videotape their minor child."

In other words, any potential unconstitutional applications of section 11-24 that arise may be adequately addressed through as-applied challenges. See *United States v. Williams*, 553 U.S. 285, 302-03 (2008).

¶ 53    Defendant points out that, where a group of children is involved, obtaining consent could become onerous. However, as the statute would still be limited to actual convicted child-sex

offenders taking pictures in which children are the focus, we are not convinced that difficulty obtaining consent in certain circumstances would result in *substantial* overbreadth.

¶ 54    To conclude, given the limiting construction suggested by the State, we hold that section 11-24 does not burden a substantial amount of protected speech. As such, defendant's facial challenge to the statute's validity necessarily fails.

¶ 55                                    b. As-Applied Challenge

¶ 56    Defendant also contends that the statute is unconstitutional as applied to him. In support, he states only that it punishes an otherwise protected form of expression if it is exercised by child-sex offenders. This is not a sufficient basis to find the restriction invalid. All time, place, or manner restrictions affect protected speech. *City of Chicago v. Alexander*, 2015 IL App (1st) 122858-B, ¶ 37 (citing *Ward*, 491 U.S. at 790). If the speech at issue were unprotected, a court could simply announce that fact, which would be dispositive of the case.

¶ 57    Moreover, defendant cites nothing in the facts of this case that would establish that this application of the statute is unconstitutional here. Indeed, the conduct to which it is being applied is defendant, a convicted child-sex offender, photographing a child without parental consent, knowing that he was not allowed to take such a photograph. He then uploaded the images to the cloud account where he could view them later before deleting them from his phone. He further acknowledged that this enabled him to share the photographs with others, and he labelled one photograph "Airsoft-Angel." Here, a child was clearly the focus of the image. The  child's father was present and known to defendant, so defendant could have easily sought permission from him to take the photograph. Further, defendant was already interacting with the child's father and would not have had to approach the child to ascertain who his father

was, so the application of the statute in the circumstances of this case would not have been counterproductive as contemplated by the *Oatman* court. See *Oatman*, 2015 WI App 76, ¶ 13.

¶ 58    In short, defendant has not established that section 11-24 is unconstitutional as applied to him.

¶ 59                            IV. CONCLUSION

¶ 60    In light of the foregoing, the judgment of the circuit court of Lake County is affirmed.

¶ 61    Affirmed.

¶ 62    JUSTICE BRENNAN, specially concurring:

¶ 63    While I join in the majority's analysis, I write separately to emphasize that there may very well be circumstances where a photograph taken in violation of section 11-24 of the Code will not in any way implicate first amendment concerns. In order to be protected under the first amendment, images must communicate some idea. See *Texas v. Johnson*, 491 U.S. 397, 404 (1989). Thus, as a threshold matter, to achieve first amendment protection, the defendant must demonstrate that he possessed (1) a message to be communicated and (2) an audience to receive that message, regardless of the medium in which the message is to be expressed. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*, 515 U.S. 557, 568 (1995). Without the communication of some idea, there is no risk that ideas or messages will be silenced in contravention of the first amendment.

¶ 64    I find persuasive the application of the above principles by the federal court in *Larsen v. Fort Wayne Police Department*, 825 F. Supp. 2d 965 (N.D. Ind. 2010). The *Larsen* court held that a father's attempt to videotape his daughter's choir competition was not protected by the first amendment. The court noted, "The First Amendment is not implicated because a person uses a camera, but rather, when that camera is used 'as a means of engaging in protected expressive

conduct.' " *Id.* at 979 (quoting *Porat v. Lincoln Towers Community Ass'n*, No. 04 Civ. 3199(LAP), 2005 WL 646093, at \*5 (S.D.N.Y. Mar. 21, 2005)). The plaintiff in *Larsen* did not argue that he was attempting to communicate anything by videotaping the performance; rather, he stated that he was making the recording "simply for his personal archival purposes." *Id.* at 980. Absent a communicative purpose, the plaintiff's actions did not merit first amendment protection. *Id.*

¶ 65    The instant case is distinguished from *Larsen* in that there is evidence that defendant intended, when taking the photos, a communicative purpose, albeit a nefarious one that ultimately does not survive intermediate scrutiny. This communicative intent at the time the photographs were created may be inferred where the defendant gave one photograph a suggestive title when he uploaded it to a cloud storage system that he acknowledged could be used to share the photograph. This is enough to warrant the majority's first amendment analysis, as "a narrow, succinctly articulable message is not a condition of constitutional protection." *Hurley*, 515 U.S. at 569. For example, courts have held that first amendment protections apply to, among other things, music (*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)), erotic material (*Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 70 (1976)), nude dancing (*City of Chicago v. Hanson*, 105 Ill. App. 3d 1017, 1020 (1981)), and artistic expression (*National Endowment for the Arts v. Finley*, 524 U.S. 569, 602 (1998)). Indeed, as the United States Supreme Court has explained, if a particularized message were required, the first amendment "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll." *Hurley*, 515 U.S. at 569.

¶ 66    In sum, while I agree that the facts of this case necessitate the engaged-in first amendment analysis, I would suggest that not all such photographs might so require.

---

**No. 2-18-1040**

---

| | |
|---|---|
| **Cite as:** | *People v. Rollins*, 2021 IL App (2d) 181040 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 16-CF-1556; the Hon. James K. Booras, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and R. Christopher White, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---