2022 IL App (1st) 201150-U

No. 1-20-1150

Order filed June 22, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | Nos. 09 290204 |
| | ) | 09 290205 |
| v. | ) | 09 290206 |
| | ) | 09 290207 |
| | ) | |
| COY BUTLER JR., | ) | Honorable |
| | ) | John J. Mahoney |
| | ) | Margaret M. Ogarek, |
| Defendant-Appellant. | ) | Judges presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justice McBride concurred in the judgment.
Presiding Justice Gordon concurred in part and dissented in part in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's driving violations of improper lane usage, transportation or possession of open alcohol, wearing a headset receiver while driving, and violating the minimum speed regulation where the trial court did not err in denying his motion *in limine* and motion to quash his arrest and suppress the evidence therefrom, and where there was sufficient evidence of him committing the offenses.

¶ 2    Following a bench trial, the trial court found defendant Coy Butler Jr. guilty of improper lane usage, transportation or possession of open alcohol, wearing a headset receiver while driving, and violating the minimum speed regulation. The court subsequently fined defendant $500 and imposed additionally mandatory assessments. On appeal, defendant contends that: (1) the court erred in denying his pretrial motion *in limine*; (2) the court erred in denying his motion to quash his arrest and suppress the evidence therefrom; and (3) there was insufficient evidence to find him guilty of the offenses. For the reasons that follow, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    In the early morning hours of August 5, 2018, Illinois State Police Trooper Raymond Kurut observed defendant veering between the left lane, center lane and right lane of Interstate 57 while driving below the posted speed limit and wearing headphones. Trooper Kurut pulled defendant over and performed various field sobriety tests on him. As a result of those tests, Trooper Kurut arrested defendant for suspected driving while under the influence of alcohol. Before having defendant's vehicle towed, Trooper Kurut performed an inventory of the vehicle. During the inventory, Trooper Kurut discovered a mostly empty beer bottle on the floor in the back row within arm's reach of the driver's seat. After taking the bottle out of defendant's vehicle, Trooper Kurut displayed it for his dash camera and then tossed it into a ditch off of the highway. Thereafter, Trooper Kurut charged defendant, by citation and complaint, with driving under the influence of alcohol, improper lane usage, transportation or possession of open alcohol, wearing a headset receiver while driving, violating the minimum speed regulation, and operating an uninsured motor vehicle, all in violation of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/1-100 *et seq.* (West 2018)).

¶ 5    An attorney filed an appearance on defendant's behalf and filed a motion *in limine* to prevent the State from presenting any testimony about the offense of transportation or possession of open alcohol, namely any reference to the beer bottle Trooper Kurut found. Defendant asserted that the bottle was empty, and he gave empty bottles to his cousin who made drinking glasses out of them. Defendant argued that, because Trooper Kurut discarded the bottle, he was unable to inspect it and show that it was actually empty. In ruling on defendant's motion, the trial court observed that, while the defense did not have the actual beer bottle, the discovery of the bottle was captured on video.[1] In turn, the court found that defendant was not harmed by Trooper Kurut discarding the bottle. Additionally, the court found that defendant did not show the State had willfully destroyed the evidence. Consequently, the court denied defendant's motion *in limine*.

¶ 6                                A. Suppression Hearing

¶ 7    Defendant also filed a motion to quash his arrest and suppress the evidence therefrom, arguing that his conduct prior to being stopped could not reasonably be interpreted as constituting a driving offense.

¶ 8    At the suppression hearing, defendant testified that, in the early morning hours of August 5, 2018, he was driving northbound on Interstate 57 in the center lane. He put on his left turn signal and attempted to move into the left lane.[2] After entering that lane about half way, he noticed a vehicle approaching so he slowed down and returned to the center lane. However, that approaching vehicle also moved into the center lane. With his left turn signal still activated, defendant again attempted to move into the left lane. But he noticed another vehicle approaching, so he retuned

---

[1] Judge John J. Mahoney ruled on defendant's motion *in limine*.
[2] Judge Margaret M. Ogarek presided over defendant's suppression hearing and subsequent bench trial.

back to the center lane. Suddenly, defendant realized the vehicle trailing him was an Illinois State Police vehicle, and Trooper Kurut activated his emergency lights. Defendant pulled over to the shoulder on the right side of the road. While sitting on the side of the road, defendant grabbed his Bluetooth headphones in order to make a phone call to his mother. At the hearing, defendant explained that he drove the way he did only in response to the driving conduct of Trooper Kurut's vehicle behind him.

¶ 9        Following the examination of defendant, the trial court admitted into evidence video from the dash camera of Trooper Kurut's vehicle. The video initially showed defendant's vehicle appear to drift slightly into the right lane while its left turn signal was activated. While defendant did this, there was a vehicle in the right lane that appeared to slow down. Once defendant's vehicle's returned to the center lane, the other vehicle sped up and passed defendant's vehicle in the right lane. Thereafter, defendant, while his left turn signal remained activated, veered into the left lane before returning to the center lane and braking. Defendant then drifted slightly into the right lane, again while his left turn signal remained activated. Defendant returned to the center lane at which point Trooper Kurut moved from the left lane to the center lane and began driving directly behind defendant. Defendant's vehicle again drifted slightly into the left lane, which caused Trooper Kurut to activate his emergency lights and pull defendant over. From the time that defendant's vehicle appeared on video and the time that Trooper Kurut activated his emergency lights, only one vehicle passed defendant. Though around the time Trooper Kurut activated his emergency lights, a vehicle could be seen entering the interstate from the on-ramp.

¶ 10       The State then presented Trooper Kurut, who testified that, in the early morning hours of August 5, 2018, he observed defendant's vehicle in the center lane driving below the minimum posted speed limit of 45 miles per hour with its left turn signal activated. Trooper Kurut determined

that defendant's vehicle was going below 45 miles per hour by using his speedometer. At the time, according to Trooper Kurut, traffic was "[t]hin to moderate." Trooper Kurut next observed defendant's vehicle move halfway into the left lane, return to the center lane and then drift about a tire width into the right lane with its left turn signal still activated. Trooper Kurut also observed that defendant had a large set of headphones on his head. Based on these observations, Trooper Kurut activated his emergency lights and pulled defendant over for violating the minimum speed regulation, improper lane usage and driving while using a headset receiver. As Trooper Kurut walked toward defendant on the shoulder of the highway, he noticed that defendant was no longer wearing the headphones. At the hearing, Trooper Kurut acknowledged that, on the citation he wrote for defendant violating the minimum speed regulation, he did not write the actual speed he observed defendant driving. Trooper Kurut explained that his software did not "allow [him] to put that in."

¶ 11    Following Trooper Kurut's testimony, defendant argued that his driving conduct was nothing more than "a reaction" to what Trooper Kurut was doing and that no headphones could be seen in the dash camera video. After the State made its argument, the trial court denied defendant's motion to suppress, finding there was ample evidence to show that defendant committed the traffic violations for which Trooper Kurut pulled him over. Although the court noted that it could not see defendant wearing the headphones in the dash camera video, the court observed that Trooper Kurut testified to that fact. The case subsequently proceeded toward trial. Before the trial occurred, the State dropped its citation against defendant of operating an uninsured motor vehicle.

¶ 12                                B. Bench Trial

¶ 13    At defendant's bench trial, the State presented Trooper Kurut, who testified to his background and training as an Illinois State Police trooper. He also testified to the events that led

to him pulling over defendant, as discussed in his testimony at defendant's suppression hearing. Notably, Trooper Kurut testified to defendant veering between the left, center and right lane, wearing "a large headphone set" while operating his vehicle and driving below the minimum posted speed limit of 45 miles per hour. However, when defendant's attorney asked Trooper Kurut on cross-examination whether defendant's driving "interfere[d] with any traffic," Trooper Kurut testified that "[t]here w[ere] no cars directly near in his vicinity." After Trooper Kurut activated his emergency lights and defendant pulled over to the shoulder, Trooper Kurut exited his vehicle and walked toward defendant. As Trooper Kurut approached, he observed that defendant was no longer wearing the headphones. Trooper Kurut began speaking with defendant, during which he noticed defendant had glassy and bloodshot eyes, his speech was slurred and there was a "very strong odor of alcohol" emanating from defendant's breath. Trooper Kurut asked defendant if he had been drinking to which defendant responded that he had drank one beer. Because of these observations, Trooper Kurut had defendant exit the vehicle and perform various field sobriety tests. While performing the field sobriety tests, Trooper Kurut observed various clues of impairment. After concluding the tests, Trooper Kurut believed that defendant was impaired and placed him under arrest for driving while under the influence of alcohol.

¶ 14    In preparation for taking defendant to the police station and having his vehicle towed, Trooper Kurut conducted a mandatory inventory of defendant's vehicle. During the inventory, he found a "open partially empty bottle of Modelo beer" on the floor in the rear passenger within arm's reach of the driver's seat. In his post-incident report, however, Trooper Kurut described the bottle as almost empty. After finding the bottle, Trooper Kurut disposed of it in the ditch area off the side of the road because there was no trash receptacle nearby. Trooper Kurut did not note the bottle on the inventory sheet and did not take the bottle as evidence, explaining that he was "not

allowed to per policy." Although Trooper Kurut saw defendant's headphones, he did not photograph them. Trooper Kurut transported defendant to the police station, where defendant told Trooper Kurut that he had drank one glass of wine four hours earlier at a friend's house.

¶ 15    During the State's case, the parties stipulated to the foundation of the video evidence, which was Trooper Kurut's dash camera video and the video was admitted into evidence. The video evidence was also published for the trial court. In addition to the video displaying defendant's driving actions, as discussed during our summary of his suppression hearing, the video showed defendant reach for the top of his head shortly after pulling over onto the shoulder of the highway. But from our review of the video, it is impossible to determine exactly what defendant was doing. Additionally, in the video, while Trooper Kurut was performing the inventory of defendant's vehicle, he discovered the Modelo bottle in the backseat. Trooper Kurut then brought the bottle toward his own vehicle and displayed it for his dash camera. Trooper Kurut gently shook the bottle, which caused some liquid at the bottom of the bottle to swirl around. Trooper Kurut then tossed the bottle over the guardrail and into a ditch off the highway.

¶ 16    In the defense's case, defendant testified that he had recently left a party in Indiana and was driving to his mother's house in Blue Island when he was pulled over. Like Trooper Kurut, defendant also testified to the events that led to him being pulled, as he discussed at his suppression hearing. Defendant asserted that, when he was moving between lanes, he was doing so safely and was allowing other vehicles to safely pass him. He did not believe that his driving interfered with any traffic. Once Trooper Kurut pulled defendant over, he grabbed his headphones to call his mother. After being unable to reach his mother, defendant placed the headphones on the passenger seat. Defendant was adamant that he was not wearing them while driving. Shortly after, Trooper Kurut approached his vehicle, and they began talking. Defendant acknowledged that Trooper

Kurut found a Modelo beer bottle in his vehicle, but stated that the bottle was empty. Defendant explained that he had the bottle because he "save[d] beer glasses" and gave them to a friend who made beer glasses. Defendant then would put the beer glasses on a website to sell. In support, defendant entered into evidence Defendant's Group Exhibit No. 2, which were shot glasses purportedly on sale on defendant's website. However, defendant conceded that he did not inform Trooper Kurut about his business.

¶ 17    Following the parties' closing arguments, the trial court initially found defendant not guilty of driving under the influence of alcohol. Regarding the charge of improper lane usage, the court asserted that Trooper Kurut testified credibly to defendant's vehicle "drifting all over that highway," which the dash camera video corroborated. Although the court noted defendant's explanation of driving timidly to allow other vehicles to pass him, the court did not believe his testimony. As such, the court found ample evidence that defendant was guilty of improper lane usage. Regarding the charge of transportation or possession of open alcohol, the court highlighted that Trooper Kurut discarded the actual Modelo bottle, but nevertheless found sufficient evidence to find that defendant was guilty of driving with an open bottle of alcohol in the car. Regarding the charge of wearing a headset receiver while driving, the court found Trooper Kurut's testimony about defendant wearing a headset receiver credible and corroborated by the video evidence, which showed defendant "pull [the headphones] off of his head" and "place" them in another location. As such, the court found defendant guilty of that offense. Finally, the court found defendant guilty of violating the minimum speed regulation based on Trooper Kurut's testimony and its own review of the video evidence, which showed defendant "appear[] to be driving at a slow rate of speed in comparison to the other vehicles on the highway." Based on defendant's driving violations, the trial court fined defendant $500 and imposed additionally mandatory assessments.

¶ 18    Defendant filed a motion for new trial, arguing, in part, that the trial court erred in denying his pretrial motion *in limine* to bar reference to the beer bottle found inside his vehicle and erred in denying his motion to quash his arrest and suppress the evidence therefrom. The court, however, denied defendant's motion. Thereafter, defendant appealed *pro se*.

¶ 19                                      II. ANALYSIS

¶ 20                          A. Motion to Quash Arrest and Suppress Evidence

¶ 21    Defendant first contends that the trial court erred in denying his motion to quash his arrest and suppress the evidence therefrom where his conduct prior to being pulled over by Trooper Kurut could not be reasonably interpreted as constituting a driving offense.

¶ 22    Both the United States Constitution and Illinois Constitution protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV; Ill. Const. 1970, art. I, § 6. The touchstone of a fourth amendment analysis is the reasonableness of the particular government intrusion of a person's personal security. *People v. Jones*, 215 Ill. 2d 261, 268-69 (2005). To this end, when a police officer stops a vehicle, that stop is subject to the fourth amendment's reasonableness requirement. *People v. Hackett*, 2012 IL 111781, ¶ 20. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." (Internal quotation marks omitted.) *Id.* While many traffic stops are supported by probable cause, the police may conduct a traffic stop with merely a reasonable, articulable suspicion. *Id.* "A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.*

¶ 23    In a motion to suppress, the defendant has the initial burden of proof. *People v. Little*, 2021 IL App (1st) 181984, ¶ 60. If the defendant makes a *prima facie* showing of an illegal stop, the

burden then shifts to the State to counter the defendant's *prima facie* case. *People v. Reedy*, 2015 IL App (3d) 130955, ¶ 45. The ultimate burden of proof, however, remains with the defendant. *Little*, 2021 IL App (1st) 181984, ¶ 60. During a suppression hearing, the trial court is responsible for weighing the evidence, drawing reasonable inferences therefrom and determining the credibility of the witnesses. *People v. Williams*, 2016 IL App (1st) 132615, ¶ 32. As such, we apply a two-part standard of review when examining the court's ruling on a motion to suppress. *People v. Almond*, 2015 IL 113817, ¶ 55. We afford great deference to the court's findings of fact and will reverse them only if they are against the manifest weight of the evidence. *Id.* But we review the ultimate legal ruling as to whether the evidence should be suppressed *de novo*. *Id.*

¶ 24    In this case, Trooper Kurut testified that he pulled defendant over for three violations of the Vehicle Code: improper lane usage (625 ILCS 5/11-709(a) (West 2018)), violating the minimum speed regulation (*id.* § 11-606(a)) and wearing a headset receiver while driving (*id.* § 12-610). Concerning the latter violation, the Vehicle Code prohibits a driver of a motor vehicle from wearing "headset receivers while driving." *Id.* The Vehicle Code defines a "headset receiver" as "[a]ny device, other than a hearing aid, designed to be worn on a person's head that enables the wearer to hear or receive electronic communications." *Id* § 1-125.7. Although there are some exceptions, none of those are implicated in this case. See *id.* § 12-610.

¶ 25    At the suppression hearing, Trooper Kurut testified that he observed defendant wearing a large set of headphones while driving. As the trial court implicitly found his testimony at the suppression hearing credible by significantly relying on it to deny defendant's motion, we must defer to its credibility finding. See *Williams*, 2016 IL App (1st) 132615, ¶ 32. And in doing so, because Trooper Kurut testified credibly to observing defendant with headphones on while driving, that gave him not only reasonable, articulable suspicion, but probable cause, to believe that

defendant was wearing a headset receiver in violation of section 12-610 of the Vehicle Code (625 ILCS 5/12-610 (West 2018)). Consequently, as the court found, Trooper Kurut had a valid basis to stop defendant's vehicle. See *Jones*, 215 Ill. 2d at 271 (finding where a police officer observed the vehicle the defendant "was driving had inoperable tail lights, a clear violation of our vehicle code," the officer's "stop of [the] defendant's vehicle was supported by probable cause").

¶ 26    Although Trooper Kurut also stopped defendant's vehicle for improper lane usage and violating the minimum speed regulation, Trooper Kurut had an independent and sufficient basis to stop defendant's vehicle for illegally wearing a headset receiver while driving such that it is immaterial whether he was also justified in stopping defendant for improper lane usage or violating the minimum speed regulation. "The seizure of a vehicle is considered reasonable and lawful where police have probable cause to believe that *a* traffic violation occurred." (Emphasis added.) *People v. Sutton*, 2020 IL App (1st) 181616, ¶ 21. Accordingly, the trial court properly denied defendant's motion to quash his arrest and suppress the evidence therefrom.

¶ 27                                B. Motion *in Limine*

¶ 28    Defendant next contends that the trial court erred in denying his motion *in limine* to preclude the State from referencing the beer bottle Trooper Kurut found in his vehicle because Trooper Kurut acted in bad faith in discarding the bottle, which therefore prevented him from examining the bottle before trial.

¶ 29    "A motion *in limine* is a pretrial motion that seeks an order excluding inadmissible evidence and prohibiting questions concerning such evidence, without the necessity of having the questions asked and objections thereto made in front of the [trier of fact]." *People v. Williams*, 188 Ill. 2d 365, 368 (1999). We review the trial court's ruling on a motion *in limine* for an abuse of discretion (*People v. Harvey*, 211 Ill. 2d 368, 392 (2004)), and will only reverse that ruling if the

court acted arbitrarily, fancifully or unreasonably to the degree that no reasonable person would adopt the same view. *People v. McDonald*, 2016 IL 118882, ¶ 32.

¶ 30    The crux of defendant's argument is that, because Trooper Kurut threw the bottle away, he was precluded from inspecting the bottle and therefore, any reference to that bottle should have been barred at trial. This essentially is an argument that Trooper Kurut's discarding of the bottle denied defendant due process. The threshold question in a due process claim based upon lost or destroyed evidence is whether that evidence was materially exculpatory or merely potentially useful. *People v. Sutherland*, 223 Ill. 2d 187, 236 (2006). If materially exculpatory evidence is withheld or destroyed, the defendant will be denied due process regardless of whether the State acted in good or bad faith. *Id.* at 236. Conversely, if the State loses or destroys evidence that is merely potentially useful, the critical question is whether there was bad faith on the part of the State. *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

¶ 31    Applying the principles of *Sutherland*, we first find that the beer bottle was only potentially useful because once Trooper Kurut discovered the bottle, he displayed the bottle for his dash camera and swirled it to show there was some liquid visible at the bottom. Moreover, to sufficiently prove defendant's guilt for transportation or possession of open alcohol, the State need not introduce evidence of chemical testing of the liquid in the container. See *People v. Hood*, 343 Ill. App. 3d 1245, 1257 (2003) ("The State's failure to introduce testimony concerning a chemical analysis of the liquid in the beer cans does not preclude a finding of guilt [of transportation or possession of open alcohol].") *rev'd in part on other grounds by People v. Hood*, 213 Ill. 2d 244 (2004); *People v. Angell*, 184 Ill. App. 3d 712, 717 (1989) (rejecting the defendant's argument that "the failure of the State to introduce testimony concerning a chemical analysis of the contents of the beer cans somehow precludes a finding of guilty" for transportation or possession of open

alcohol). In defendant's motion *in limine* he argued that he was prejudiced by Trooper Kurut discarding the bottle because he was unable to inspect the bottle to show that there was no liquid in it. And he supported this argument by asserting that he collected empty beer bottles for his friend who made beer glasses. That is to say, this is not a case where defendant would have credibly claimed that the liquid present in the bottle was some liquid other than alcohol. Consequently, the bottle was not materially exculpatory evidence, but rather only potentially useful evidence.

¶ 32    Having found the beer bottle only potentially useful evidence, we turn to the bad-faith component. Throughout this case, defendant presented no evidence that Trooper Kurut discarded the bottle of beer in bad faith. Indeed, at trial, he testified that he did not take the bottle as evidence because he was "not allowed to per policy." In *Sutherland*, 223 Ill. 2d at 237, our supreme court rejected a defendant's claim of bad faith on the part of the State in destroying a piece of evidence where he "failed to offer anything, other than mere speculation." Here, similarly, in defendant's motion *in limine*, he asserted in conclusory fashion that Trooper Kurut acted in bad faith. Therefore, we have no basis to find that Trooper Kurut acted in bad faith.

¶ 33    Given that the beer bottle was merely potentially useful evidence and the lack of evidence of bad faith on the part of Trooper Kurut, the trial court did not act arbitrarily, fancifully or unreasonably in denying defendant's motion *in limine* to bar reference to the beer bottle at trial. Consequently, the court did not abuse its discretion in denying defendant's motion *in limine*.

¶ 34                              C. Sufficiency of the Evidence

¶ 35    Defendant next contends that the State failed to present sufficient evidence to prove him guilty of improper lane usage, transportation or possession of open alcohol, wearing a headset receiver while driving, and violating the minimum speed regulation.

¶ 36     When a defendant challenges the sufficiency of the evidence, the reviewing court must determine if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. All reasonable inferences from the evidence must be made in the State's favor. *People v. Hardman*, 2017 IL 121453, ¶ 37. Under this standard of review, it is not the reviewing court's role to retry the defendant. *Gray*, 2017 IL 120958, ¶ 35. And the reviewing court will not substitute its judgment for that of the trier of fact on issues involving the credibility of witnesses, the weight to be afforded to the trial evidence, the drawing of reasonable inferences from the evidence and the resolution of conflicts within the evidence. *Id.* We may only reverse if "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 37                                   1. Improper Lane Usage

¶ 38     One of the offenses that the trial court found defendant guilty of was improper lane usage in violation of section 11-709(a) of the Vehicle Code (625 ILCS 5/11-709(a) (West 2018)). That section of the Vehicle Code states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." *Id.* In order convict a driver of this offense, there must be evidence that that the "defendant deviated from his proper lane of travel and that no road conditions necessitated the movement." (Emphasis omitted.) *Hackett*, 2012 IL 111781, ¶ 28.

¶ 39     In this case, Trooper Kurut testified that he observed defendant's vehicle move halfway into the left lane, return to the center lane and then drift about a tire width into the right lane while traffic was "[t]hin to moderate" and while his left turn signal was activated. Furthermore, the video from Trooper Kurut's dash camera showed defendant's vehicle weaving between the lanes and

showed that no road conditions necessitated his movement between lanes. Trooper Kurut's testimony, which the trial court found credible, in conjunction with the video evidence established that defendant deviated from his proper lane of travel and that no road conditions necessitated the movement. See *id.* Although defendant claims that the road conditions, *i.e.*, Trooper Kurut's driving, necessitated his movement between lanes, such a question is one of fact for the trial court to resolve. See *Gray*, 2017 IL 120958, ¶ 35. Indeed, defendant made this argument to the court during trial, who disbelieved that his conduct was necessitated by Trooper Kurut's driving. Consequently, when viewing the evidence in this case in the light most favorable to the State, there was sufficient evidence to prove that defendant committed the driving offense of improper lane usage.

¶ 40                                    2. Transportation or Possession of Open Alcohol

¶ 41    Additionally, the trial court found defendant guilty of transportation or possession of open alcohol (625 ILCS 5/11-502(a) (West 2018)). This section of the Vehicle Code prohibits a driver from transporting, carrying, possessing or having "any alcoholic liquor within the passenger area of any motor vehicle upon a highway *** except in the original container and with the seal unbroken." *Id.* "[S]ection 11-502(a) turns on the actual presence of alcohol, not merely the container." *People v. Bailey*, 2019 IL App (3d) 180396, ¶ 27. As previously noted, although the statute prohibits transporting an open alcoholic container, the State need not introduce evidence of chemical testing of the liquid in the container to sufficiently prove a defendant's guilt for the offense. See *Hood*, 343 Ill. App. 3d at 1257 *rev'd in part on other grounds by Hood*, 213 Ill. 2d 244; *Angell*, 184 Ill. App. 3d at 717. Additionally, transportation or possession of open alcohol is a strict liability offense, and as such, the State "is not required to prove that the defendant, as the driver of the vehicle, had knowledge of the existence of the open container of alcoholic liquor."

*Angell*, 184 Ill. App. 3d at 716-17. Furthermore, because the statute uses the word "any" to modify "alcoholic liquor" (625 ILCS 5/11-502(a) (West 2018)), this demonstrates a legislative intent to interpret the statute broadly. See *People v. Rollins*, 2021 IL App (2d) 181040, ¶ 43.

¶ 42     In this case, after pulling defendant over and approaching his vehicle, Trooper Kurut observed that defendant had glassy and bloodshot eyes, his speech was slurred and there was a "very strong odor of alcohol" emanating from his breath. These observations coupled with defendant's performance on various field sobriety tests led to Trooper Kurut arresting him for driving while under the influence of alcohol. After arresting defendant, Trooper Kurut performed an inventory of defendant's vehicle in preparation for the vehicle being towed. In doing so, Trooper Kurut found an "open partially empty bottle of Modelo beer" on the floor in the back row, well within arm's reach of the driver's seat. Trooper Kurut then brought the bottle to his vehicle and displayed it for the dash camera. In the dash camera video that was admitted into evidence at trial, the bottle was open and Trooper Kurut gently shook the bottle, which caused some liquid at the bottom to swirl around.

¶ 43     Trooper Kurut's testimony of observing defendant with glassy and bloodshot eyes, slurred speech and a strong odor of alcohol in conjunction with the video evidence showing liquid in the beer bottle established that defendant was transporting "*any* alcoholic liquor" within the passenger area of his vehicle (625 ILCS 5/11-502(a) (West 2018) (emphasis added)), and though the alcohol was in its original container, the seal was broken. See *People v. Gore*, 115 Ill. App. 3d 1054, 1057 (1983) (sufficient evidence of the defendant's guilt of the offense of illegal transportation of alcoholic liquor where the police recovered open bottles that "were labeled Pabst Blue Ribbon Beer" with liquid inside). While Trooper Kurut did not testify that he examined the contents of the Modelo bottle, the circumstances were sufficient to support an inference that the liquid in the

Modelo bottle was an alcoholic liquor. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) (noting that the trier of fact has the responsibility to weigh the evidence and "draw reasonable inferences therefrom").

¶ 44    It is true that, at trial, defendant asserted that the beer bottle was empty and explained that he had the bottle because he "save[d] beer glasses" and gave them to a friend who made beer glasses. But merely because defendant testified to this innocuous explanation for possession of the beer bottle did not mean that the trial court had to accept it as true. "The trier of fact is not obligated to accept all or any part of the defendant's testimony, but may assess the probabilities, the reasonableness of any defense offered and reject any or all of defendant's account in favor of the State's circumstantial evidence of guilt." *People v. Nyberg*, 275 Ill. App. 3d 570, 579 (1995). Notably, despite explaining at trial why he had the beer bottle, defendant conceded he never provided the explanation to Trooper Kurut. Moreover, while stopped by Trooper Kurut, defendant admitted to drinking one beer, though, at the police station, he changed his drinking to one glass of wine at a friend's house earlier in the evening. As such, the trial court properly rejected defendant's explanation for possessing the beer bottle. And consequently, when viewing the evidence in this case in the light most favorable to the State, there was sufficient evidence to prove that defendant committed the driving offense of transportation or possession of open alcohol.

¶ 45                    3. Wearing a Headset Receiver While Driving

¶ 46    The third offense that the trial court found defendant guilty of was wearing a headset receiver while driving (625 ILCS 5/12-610 (West 2018)). As previously noted, the Vehicle Code prohibits people from wearing a "headset receivers while driving" (*id.*), which is defined as "[a]ny device, other than a hearing aid, designed to be worn on a person's head that enables the wearer to hear or receive electronic communications." *Id* § 1-125.7. Although there are some exceptions,

none of those are implicated in this case. See *id.* § 12-610. Moreover, defendant has not argued that the headphones he had in his vehicle did not come under the definition of "headset receiver" in the Vehicle Code, thereby tacitly admitting they were considered a headset receiver.

¶ 47    Defendant's guilt for this offense largely rested upon a credibility contest between him, who testified that he was not wearing headphones while driving, and Trooper Kurut, who testified that he observed defendant wearing headphones while driving. As his guilt for this offense was essentially a credibility contest, we must defer to the trial court's determination that Trooper Kurut testified credibly to his observation of defendant wearing a headset receiver while driving. See *Gray*, 2017 IL 120958, ¶ 35. However, we do note that, when the court rendered its verdict, it stated that the video evidence showed defendant pull the headphones off of his head while driving. While we cannot say conclusively that defendant did this while driving based on our review of the video evidence, this finding by the court merely buttressed Trooper Kurut's observation, which by itself was sufficient evidence of defendant's guilt given that Trooper Kurut was driving directly behind defendant. See *People v. Thompson*, 2016 IL App (1st) 133648, ¶ 34 ("The testimony of a single eyewitness may suffice to convict if the witness is credible and was able to view the defendant under conditions permitting a positive identification.").

¶ 48    Though defendant argues that Trooper Kurut did not confiscate the headphones or take any photographs of the headphones, defendant does not contest that he was in possession of them while driving. The fact that Trooper Kurut did not confiscate the headphones or take photographs of them does not preclude a finding of guilt for this driving offense. Consequently, when viewing the evidence in this case in the light most favorable to the State, there was sufficient evidence to prove that defendant committed the driving offense of wearing a headset receiver while driving.

¶ 49                        4. Violating the Minimum Speed Regulation

¶ 50    The final offense of which the trial court found defendant guilty was for violating the minimum speed regulation (625 ILCS 5/11-606(a) (West 2018)). That section of the Vehicle Code prohibits a person from driving his vehicle "at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation of his vehicle or in compliance with law." *Id.* Our research reveals no decisions from an Illinois court involving the sufficiency of the evidence to establish a violation of section 11-606(a) of the Vehicle Code. However, multiple decisions have involved whether police officers had a valid basis to stop a vehicle for violating that section. See *People v. Brand*, 71 Ill. App. 3d 698, 700-01 (1979); *People v. Hutson*, 45 Ill. App. 3d 977, 979 (1977). And in both cases, this court not only focused on the defendants' speed but also whether their slow driving disrupted other drivers. See *Brand*, 71 Ill. App. 3d at 700-01 (finding there was no valid basis to stop the defendant for violating the minimum speed regulation where, although "a very slowly driven vehicle may pose a hazard to other motorists who operate their vehicles at a faster rate [citation], the record [did] not demonstrate that defendant's manner of driving resulted in a substantial danger to other motorists"); *Hutson*, 45 Ill. App. 3d at 979 (finding there was a valid basis to stop the defendant for violating the minimum speed regulation because he was driving 20 to 25 miles per hour on the highway where the minimum posted speed limit was 45 miles per hour and his slow driving caused "10 to 15 cars [to be] backed up behind him").

¶ 51    Here, Trooper Kurut testified that defendant's vehicle was driving much slower than the posted minimum speed limit of 45 miles per hour. Such testimony may have been sufficient evidence of guilt if defendant had been charged under section 11-606(b) of the Vehicle Code (625 ILCS 5/11-606(b) (West 2018)), which requires the State merely to prove that a defendant drove below a minimum posted speed limit imposed by the Department of Transportation of the State of

Illinois, the Illinois State Toll Highway Authority or other local authority. But, in this case, defendant was charged under section 11-606(a) of the Vehicle Code (*id.* § 11-606(a)), which requires the State to prove that a defendant drove "at such a slow speed *as to impede or block the normal and reasonable movement of traffic* except when reduced speed is necessary for safe operation of his vehicle or in compliance with law." (Emphasis added.) And Trooper Kurut never testified that defendant's driving impacted others around him. In fact, when defendant's attorney asked Trooper Kurut on cross-examination whether defendant's driving "interfere[d] with any traffic," Trooper Kurut stated that "[t]here w[ere] no cars directly near in his vicinity." If only Trooper Kurut's testimony had been admitted as evidence at trial, it would be difficult to find sufficient evidence that defendant drove at such a slow speed as to impede or block the normal and reasonable movement of traffic.

¶ 52 But, in addition to Trooper Kurut's testimony, the State introduced his dash camera video, which the trial court partially relied on in finding defendant guilty of the offense. And in that video, defendant appeared to impede or block a vehicle in the right lane from its normal course of driving. As defendant drifted into the right lane well before Trooper Kurut began tailing him, another vehicle already in the right lane slowed down as it approached defendant's vehicle. Once defendant returned to the center lane, that other vehicle sped up and passed defendant. When viewing the video evidence and Trooper Kurut's testimony in the light most favorable to the State, it sufficiently proved that defendant impeded or blocked the normal and reasonable movement of traffic. Yet, doing so is not automatically illegal, as a driver could do so "when reduced speed is necessary for safe operation of his vehicle or in compliance with law." *Id.* Indeed, defendant claimed at trial and again on appeal that his driving was only in response to Trooper Kurut's driving. Such a question, however, is one of fact for the trial court to resolve (see *Gray*, 2017 IL

120958, ¶ 35), and the court rejected defendant's claim at trial. Consequently, there was sufficient evidence to prove that defendant violated the minimum speed regulation.

¶ 53                                    III. CONCLUSION

¶ 54    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 55    Affirmed.

¶ 56    PRESIDING JUSTICE GORDON, dissenting:

¶ 57    I agree with the majority's decision in this case except for the conviction of transportation or possession of alcohol and I must respectfully dissent as to that conviction. The trooper testified that the beer bottle was mostly empty, although there was some liquid at the bottom of the bottle, but the trier of fact did not know whether that was a few drops or more. The trooper testified he made a video of the bottle but then disposed of the bottle. The video was not helpful to show what amount of liquid, if any, was in the bottle, whether it was a few drops or more. To find a defendant guilty beyond a reasonable doubt of transportation or possession of alcohol under the evidence presented in this case would be against the manifest weight of the evidence, especially when the bottle was thrown away by the trooper and where defendant testified the bottle was empty.

¶ 58    For the foregoing reasons, I must respectfully dissent.